Samuels, J.
In this case the question is presented, Whether the general assembly intended by the statute, Code, ch. 56, § 4, p. 292, to forbid the construction of works of internal improvement within the space of sixty feet about any dwelling-house whatever, by whomsoever that space may be owned, or only to protect the owners in the enjoyment of their dwelling-houses, and of a space of sixty feet of their own land lying about such dwelling-houses? In my opinion, the terms of the statute, standing alone, import that a dwelling-house and a space of sixty feet about it are exempt from invasion by internal improvement companies, as being reserved to the owner thereof. Without such invasion,the owner enjoys his dwelling-house and circumjacent land to the extent of his boundary, however large. If, however, public necessity requires that a portion of his property be taken from him, it may be done, but not so as to invade his dwelling- *377 house or a space of sixty feet about it. The law merely reserves to the owner a limited extent of his own property, but does not confer on him any control whatever over the land of the coterminous owner. The law gives to every owner of land a right to use it as he may please, if he take care to do nothing to impair the right of individuals or of the public. In ornease, before the location of this road the appellee had no control over the lot belonging to Freeman, on which the rail road is located. Her only right in regard to it was to have it kept clear of nuisance. Yet it is not alleged in the bill, as any part of the appellee’s equity, that the rail road is or will be a nuisance. The damage and irreparable mischief alleged are only such as will result from the construction of the road within the sixty feet; but no specification is made of the reasons to apprehend that damage or mischief may ensue. This is asserting a power of control over the property of another, not known in law, unless it be conferred by this statute. It was perfectly competent for the general assembly to exempt from the operation of the internal improvement laws any portion of an individual’s property, and to secure him in the enjoyment thereof. If, however, the general assembly should go beyond this, and attempt to confer on such individual the right to control his coterminous neighbor in the use of his property, in any mode theretofore lawful, it may be doubted whether the attempt would not be against the constitution. The attempt, however, has not been made in this case, and it would be out of place to consider what would be the law if such had been the purpose of the statute.
In construing a statute, which is itself a revisal of former statutes, if there be any doubt about its meaning, we should look to the former laws, of which it is *378 a revisal. They are allowed weight in settling the construction in such case. The statute, 2 Rev. Code, p. 213, § 7, in regard to turnpike roads, enacted before rail roads were used in Virginia, protected only the dwelling-house, yard, garden and curtilage, from invasion by turnpike companies. It said nothing whatever about the use which might be made of coterminous land. The general rail road law, enacted March 11, 1837, Sess. Acts, p. 104, § 5, provides, “ that no dwelling-house or space within sixty feet of one, belonging to any person, be invaded without his consent and the present statute in its terms is substantially the same as that of 1837. Looking to the distinct,- well defined rights of property as between coterminous landholders, that one has no right to control the use which the other may make of his property, so long as he keeps within the law against nuisances, we must hold, upon the facts of this case, that the appellee has no right to control the use made of the coterminous lot by the owners thereof; and the injunction should therefore have been dissolved. It is thus unnecessary to decide whether the charter of the appellant and the arrangement made with the council of the city of Richmond withdraws the case from the general rail road law, and gives the appellant rights not conferred by that law, seeing that, in the opinion of the court, the general law gives the right asserted by the appellant, and that it is not compelled to rely on its charter for any right not conferred on all rail road companies. Ror is it necessary to decide what power the general assembly would have to confer on the appellee a new right to control the use to be made of the lot occupied by the appellant, seeing that the law does not confer, nor attempt to confer, such new right. Ror is it necessary to decide whether under the law a distinction is to be made between a dwelling- *379 house occupied by the owner'as such, and a dwelling-house let to a tenant; seeing that in regard to either no protection is afforded beyond the limits of sixty feet of the land occupied with it.
I am of opinion to reverse the order, and to dissolve the injunction.
The other judges concurred in the opinion of Samuels, J.
Decree reversed, and injunction dissolved.