# Wheeling.

## The Chesapeake and Ohio Railway Company,

*v.*

### Hoard, *et al.*,

Decided March 20, 1880.

1. A statute general in its terms and without negative words will not be construed to repeal by implication the particular provisions of a former statute which are special in their application to a particular case, or class of cases, unless the repugnancy be so glaring and irreconcilable as to indicate the legislative intent to repeal.

2. The provisions in chapter eighty-eight of the Acts of 1872–3, in reference to the manner in which lands shall be condemned by railroad companies, is not repealed nor abrogated by chapter one hundred and fourteen of the Acts of 1875, and the amendatory act of 1879, chapter eight, and therefore the circuit court has no jurisdiction in a case where a railroad company seeks to condemn lands, the jurisdiction in such cases being confined to the county court, as decided in *Railroad* v. *Patton,* 9 W. Va., 648.

Writ of error to an order of the circuit court of the county of Wayne, rendered on the 16th day of August, 1879, in a cause in said court then pending, wherein The Chesapeake & Ohio Railway Company was plaintiff and C. B. Hoard and others were defendants, allowed upon the petition of said company.

Hon. Evermont Ward, judge of the ninth judicial circuit, rendered the order appealed from.

The facts of the case are stated in the opinion of the Court.

1880
Special Term.

The Chesapeake
& Ohio Rail-
way Co.
v.
Hoard *et al.*

*W. J. Robertson* and *William H. Hogeman,* for appellant, cited the following authorities :

Acts 1875, ch. 114; Acts 1879, ch. 8; Con. W. Va. Art. III; Acts 1866, ch. 131, § 10; Potter's Dwarris 110; 6 W. Va. 235; *Id.* 410; *Id.* 147; 16 Gratt. 1; 11 Wall. 88; 12 Mass. 537; 8 W. Va. 613; Potter's Dwarris 654; Sedg. Con. Stat. 19; Acts 1875, ch. 82.

*James H. Ferguson,* for appellee, cited the following authorities :

Con. W. Va. Art. XI, §§ 1, 7—12; Acts 1872–3, ch. 88, §§ 18, 37, 44, 45; *Id.* ch. 227; Acts 1875, ch. 114; Code ch. 42; 9 W. Va. 648.

MOORE, JUDGE, delivered the opinion of the Court :

The Chesapeake and Ohio Railway Company petitioned the circuit court of Wayne county to cause commissioners to be appointed to view certain lands belonging to the defendants and ascertain a just compensation therefor, and to make such orders and have such proceedings therein as needful to vest in the petitioner a full, complete and legal title to said lands. The defendants, C. B. Hoard and The Ceredo Cemetery Association, moved to dismiss the proceeding for want of jurisdiction, which motion the circuit court sustained and by its order, entered August 16, 1879, did dismiss the proceeding for want of jurisdiction. The Chesapeake and Ohio Railway Company, petitioned for and obtained a writ of error to said order, and thus presents for our consideration the one question : Had the circuit court of Wayne county jurisdiction of the matter ?

The appellant contends that this jurisdiction of the circuit court exists by virtue of chapter one hundred and fourteen of the Acts of 1875, as amended by chapter eight of the Acts of 1879. It is contended by the

1880
Special Term.

The Chesapeake
& Ohio Rail-
way Co.
v.
Hoard et al.

appellees that these acts have no reference to railroads, and that the only remedy for railroad companies in such cases, is under chapter eighty-eight, Acts of 1872–3, which gives the jurisdiction to the "court of the county wherein the land or material to be taken may be," and that this means the *county court.*

In the case of *The C. & O. R. R. Co.* v. *Patton et al.*, 9 W. Va. 648, this Court decided that: "The *thirty-seventh* section of chapter eighty-eight of the Acts of 1872–3, requires all railroad companies, which, when this law was passed, April 3, 1873, were constructing their roads, if they desired to acquire title to lands, to proceed in the manner prescribed by the *eighteenth* section of such act, and after the passage of this act, such a railroad, though incorporated before this act passed, cannot condemn lands in the manner prescribed by the Code of West Virginia." Such being the construction given to chapter eighty-eight of the Acts of 1872–3, by this Court, it follows that the Chesapeake and Ohio Railway Company in its application to condemn the lands of the appellees in this case, must follow the provisions of said chapter eighty-eight, unless those provisions have been altered by subsequent legislation. Section eighteen of said chapter. eighty-eight confers the jurisdiction for condemnation, in behalf of railroads, upon "the *court of any county* wherein the land or material to be taken may be." That language I interpret to mean the *county court,* and not the circuit court. The forty-second section declares: "All general laws of this State in relation to railroad corporations, and the powers and duties thereof, *so far as the same are not inconsistent* with the provisions of this act, shall remain in force and be applicable to railroad corporations organized under this act," &c.

Section forty-five, repeals " all acts and parts of acts *inconsistent* with the provisions of this act," therefore it follows that whatever tribunal may have had jurisdiction in such matters of condemnation of lands prior to the

passage of chapter eighty-eight, (April 3, 1873,) its jurisdiction was, so far as railroad associations were concerned, transferred to the county court. The title of chapter eighty-eight, Acts 1872-3, is: "An act to provide for the incorporation of associations that may be organized for the purpose of constructing railroads, maintaining and operating the same; for prescribing and defining the duties and limiting the powers of such corporations when so organized."

Article six, section thirty, Constitution ordains, that "no act hereafter passed shall embrace more than one object, and that shall be expressed in the title. But if any object shall be embraced in an act, which is not so expressed, the act shall be void only as to so much thereof, as shall not be so expressed, and no law shall be revived, or amended, by reference to its title only; but the law revived, or the section amended, shall be inserted at large in the new act."

The object of chapter eighty-eight, Acts 1872-3, is made plain in the title. It cannot be misunderstood from the title and the act itself, that the Legislature intended to pass by chapter eighty-eight a general act applicable to railroads alone, and thus withdraw railroad associations or companies as fully as possible from the provisions of the Code governing corporations in general. Such seems to have been the view of this court in its decision of the case of the *Railroad* v. *Patton*, before cited. Therefore, as by the Act of April 3, 1873, (chapter eighty-eight,) a uniform law was intended to be given to railroads, it follows, that after its passage, April 3, 1873, chapter forty-two of the Code was no longer applicable to railroads, however applicable it may have been as to others seeking condemnation of private property.

But it is argued that the Legislature, by passing chapter one hundred and fourteen, Acts 1875, as amended by chapter eight, Acts 1879, operates a repeal of chapter eighty-eight, Acts 1872-3, as to condemnation. The

1880
Special Term.

The Chesapeake
& Ohio Rail-
way Co.
v.
Hoard *et al.*

title of the Act 1875, chapter one hundred and fourteen, is: "An act amending certain sections of chapter forty-two of the Code of West Virginia, for taking lands for public purposes without the owner's consent." The first section is *verbatim* the *ninth* section of article *three* of the Constitution, which ordains, that " private property shall not be taken or damaged for public use, without just compensation; nor shall the same be taken by any company incorporated for the purposes of internal improvement, until just compensation shall have been paid, or secured to be paid, to the owner; and when private property shall be taken, or damaged, for public use, or for the use of such corporations, the compensation to the owner shall be ascertained in such manner, as may be prescribed by general law. *Provided,* That when required by either of the parties, such compensation shall be ascertained by an impartial jury of twelve freeholders." The *first* section of chapter forty-two of the Code, as thus amended, declared: " Private property shall not be taken for public use without just compensation; nor then, unless such taking has been authorized by statute."

The second section of the act of 1875, as amended by chapter eight, Acts 1879, declares: "The public use for which such private property may be taken shall be for the purposes of internal improvement; for the construction of roads, canals, public streets and alleys; for incorporated companies of which the State is sole or part owner; for court-houses and other public buildings, and for the use of cemetery associations and public burying grounds. * * *; and for the use of companies incorporated for the purpose of transporting oil or other fluids by lines of tubing or piping or otherwise; and for telegraph or telephone companies; for school-houses and all other public institutions incorporated by law. And if such private property be taken by any incorporated company other than a company incorporated for public purposes in which the State is owner of the property,

1880
Special Term.

The Chesapeake
& Ohio Rail-
way Co.
v.
Hoard *et al.*

the same shall not be taken or damaged until just compensation shall have been paid to the owners or secured, to be paid in such manner as the court before whom the proceedings may be had shall deem satisfactory. The compensation to the owner shall be ascertained in the mode prescribed by law," &c.

The third section of chapter one hundred and fourteen, Acts 1875, as amended by the eighth chapter of Acts 1879, declares: "In any case in which real estate may be lawfully taken, application by petition may be made to the circuit court or county court of the county, in which such real estate is situated, to appoint commissioners to ascertain a just compensation to the owner of the estate proposed to be taken," &c.

Chapter one hundred and fourteen, Acts 1875, with some slight amendments unimportant to this enquiry, proceeds to re-enact chapter forty-two of the Code, substantially section by section ; and then by section twenty-eight declares the repeal of chapter forty-two of the Code and all laws in conflict with the act.

It is argued that said chapter one hundred and fourteen, was intended by the Legislature to be a general act upon condemnation in all cases where private property is taken or damaged for public use, or when taken by any company, incorporated for the purposes of internal improvement, and that it was enacted to conform to section nine, article three of the Constitution, which section is made the *first* section of this act, and therefore includes railroads, and consequently operates as a repeal of chapter eighty-eight, Acts 1872–3, in the matter of condemnation, because in that respect chapter eighty-eight is in conflict with this general law.

It is plain from the title of chapter one hundred and fourteen, Acts 1875, that its object was to amend certain sections of chapter forty-two of the Code; a chapter, which so far as railroads were concerned, had already been repealed by chapter eighty-eight, Acts 1872–3, as interpreted in *Railroad* v. *Patton.* The act of 1875, not

1880
Special Term.

The Chesapeake
& Ohio Rail-
way Co.
v.
Hoard *et al.*

only carried out its object, as set forth in the title, by amending *"certain sections* of chapter forty-two of the Code," but went farther, and actually re-enacted all the other sections, except section twenty-seven, which is not mentioned, and then by section twenty-eight, declared chapter forty-two of the Code and all laws in conflict with the act of 1875, chapter one hundred and fourteen, repealed. The act of 1875, chapter one hundred and fourteen, as amended by chapter eight, Acts of 1879, was evidently enacted in obedience to the said ninth section of article three of the Constitution, as evinced by engrafting that section of the Constitution into the first section of the act; and it was intended to be a general act in all such cases as are designated in its *second section*; and would seem by its general terms to include railroads, were it not that railroads had already been provided for by the general law chapter eighty-eight, Acts 1872–3, which was made pursuant to *section one* article twelve of the Constitution; and which constitutional provision ordains: "The Legislature shall provide for the organization of all corporations hereafter to be created by general laws, *uniform as to the class to which they relate*; but no corporation shall be created by special laws," &c. The provisions of chapter eighty-eight for the condemnation of lands, do not conflict with section nine, article three of the Constitution, but are as consonant with the requirements of said section as are the provisions of chapter one hundred and fourteen of the Acts of 1875.

As the Legislature had before them, at the time they passed chapter eighty-eight, both of those sections of the Constitution, and as they did not violate either section by the act, and the act being fully within the scope of legislative power, it is plain that they intended to separate railroads from all other "companies incorporated for the purpose of internal improvement," and thus in carrying out that intention, they withdrew railroads from the operation of chapter forty-two of the Code by that

act. Therefore, as chapter forty-two did not apply to railroads at the time of the passage of chapter one hundred and fourteen, of 1875, as amended by chapter eight, of 1879, it is clear that the act of 1875, amendatory of chapter forty-two, did not apply to railroads, and could not have been intended to apply.

1880
Special Term.

The Chesapeake
& Ohio Rail-
way Co.
v.
Hoard *et al.*

This conclusion is the more obvious, when we take into consideration the fact that by the Acts of 1872–3, chapter eighty-eight, as the Legislature had taken into particular and special consideration the question of condemnation as applicable to railroads, if it did intend to include railroads in the act of 1875, it would have been at least as specific as it was as to canals, because a canal is as much a work of internal improvement as a railroad, yet the act of 1875 specifically includes canals. Condemnation for streets and alleys was, by chapter forty-seven, section forty-six, of the Code, brought under the provisions of chapter forty-two of the Code ; condemnation for school-houses was provided for by section thirty-nine, chapter forty-five of the Code, (but not mentioned in chapter forty-two), and was amended by section thirty-six, chapter one hundred and twenty-three, Acts 1872-3, which was a detailed amendment and re-enactment of the school law of the State as full and specific, as to the whole subject, as is the railroad act as to railroads, yet the act of 1875 designates all those purposes specifically ; and so too was condemnation for others of the several purposes designated in the act of 1875 provided for by other chapters of the Code, or by separate acts distinct from chapter forty-two. Certainly by being so particular in thus enumerating such matters, it is at least strange, that the Legislature did not designate specifically railroads, if they intended to abrogate the specific and detailed act of 1872–3. That they did not intend to abrogate chapter eighty-eight, of Acts 1872–3, is to some extent manifested by the Legislature amending sections twenty-three and thirty-seven of chapter eighty-eight, by chapter one hundred and six, Acts 1877.

1880
Special Term.

The Chesapeake
& Ohio Rail-
way Co.
v.
Hoard et al.

As has been said, as to Acts of Parliament, that: "It is a general rule that subsequent statutes, which add accumulative penalties, and institute new methods of proceeding, do not repeal former penalties and methods of proceeding ordained by preceding statutes, without negative words. Nor hath a latter act of Parliament ever been construed to repeal a prior act, unless there be a contrariety or repugnancy in them, or, at least, some notice taken of the former act, so as to indicate an intention in the law giver to repeal it. Neither is a bare recital in a statute without a clause of repeal, sufficient to repeal the positive provisions of a former statute. *Dove* v. *Grey*, 2 T. R. 358. The law does not favor a repeal by implication, unless the repugnance be quite plain; and such repeal carrying with it a reflection on the wisdom of former Parliaments, it has ever been confined to repealing as little as possible of the preceding statutes. 11 Rep. 63; Dyer, 347. Although, then, two acts of Parliament are seemingly repugnant, yet if there be no clause of *non obstante* in the latter, they shall, if possible, have such construction, that the latter may not be a repeal of the former by implication. The same view has been taken where powers under several acts are such as may well subsist together. 15 East 377.

A subsequent act, too, which can be reconciled with a former act, shall not be a repeal of it, though there be negative words; as the 1 & 2 Ph. & M. ch. 10, that all trials for treason shall be according to the course of the common law, and not *otherwise,* does not take away 35 H. VIII, Ch. 2, for of treason trial beyond the sea. *Foster's Case,* 11 Rep. 63." Potter's Dwarr. on Stat. 156. The American authorities are to the same effect.

In *Robbins* v. *The State*, 8 Ohio St. 190, Bartley, C. J. delivering the opinion of the court, said : " The offence of killing a woman pregnant of a quick child, by administering to her medicine, with intent to produce abortion and thereby destroy the unborn child, is specially provided for by the statute relating to that subject,

passed in 1834. It is true, the killing of a person unin-tentionally and without malice, while the slayer is en-gaged in any unlawful act, is, by the statute for the pun-ishment of crimes, enacted in 1835, made manslaughter; and it is difficult, if not impossible, to distinguish the offence, provided for by the statute of 1834, from that defined in the statute of 1835, by any of the ingredients essential to the crime. The offence will answer the de-scriptive definition of either statute, and the only actual distinction made is in the penalty, which, under the act of 1834, is imprisonment in the penitentiary from one to seven years, and that, under the act of 1835, from one to ten years. As to the elements of the crime, and also the punishment as far as the imprisonment of from one to seven years goes, the two statutes, as to this offence, are identical; the only discrepancy consisting in the discretion given by the last statute, to make the impris-onment three years longer than that authorized by the first. The act of 1835 contains no express repeal of the act of 1834. And as repeals by implication are not favored, a subsequent affirmative statute does not repeal a prior statute unless there be conflict between the two, which is direct and irreconcilable upon any recognized rule of statutory construction. *Wood* v. *United States*, 16 Pet. 342, 362; *Rex.* v. *Paine*, 1 East P. C. 5; Bish. Cr. Law § 92.

There are instances where statutes, enacted at different times, and not conflicting in any essential matter, are allowed to stand as concurrent provisions. But it ap-pears to be well settled, that a statute, general in its terms and without negative words, will not be construed to repeal, by implication, the particular provisions of a former one, which are special in their application to a particular case, or class of cases, unless the repugnancy be so glaring and irreconcilable as to indicate the leg-islative intention to repeal. Dwarr. on Stat. 532; 6 Rep. 196; Sedg. on Stat. Con. 123. The author last cited, says; "The reason and philosophy of the rule are,

1880
Special Term.

The Chesapeake
& Ohio Rail-
way Co.
v.
Hoard *et al.*

1880
Special Term.

The Chesapeake
& Ohio Rail-
way Co.
v.
Hoard et al.

that when the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute, in general terms, or treating the subject in a general manner, and not expressly contradicting the original act, shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter act such a construction, in order that its words shall have any meaning at all. So it is said, that inasmuch as two acts seemingly repugnant must, if possible, be so construed that the latter may not operate as a repeal of the former by implication, a subsequent statute, which is general, does not abrogate a former statute which is particular and special in its application. 12 Ill. 341."

Upon the same principle it was held in *Mills* v. *State*, 23. Tex. 295, that the act of the 7th of April, 1846, to prohibit individuals from issuing bills, checks, promissory notes or other paper, to circulate as money, was evidently passed in obedience to the thirty second section of the general provisions of the State Constitution; and the act of March 20th, 1848, to suppress illegal banking, was enacted to carry into effect the thirtieth section of the general provisions of the Constitution, and cannot be held to have repealed, by implication, the statute of 1846; but that both acts were intended to stand together, and to carry into effect the policy of the state upon the general subject of private and illegal banking, and the issuing of bills, checks, &c., to circulate as money; but each applies to a particular type of the mischief at which they were aimed. These decisions seem to accord generally with the American authorities. Hence, we are brought to the conclusion as to the principle governing this case, that a statute general in its terms, and without negative words, will not be construed to repeal by implication the particular provisions of a former statute which are special in their application to a general case, or class of cases, unless the repugnancy be so glaring and irreconcilable as to indicate the legislative

intent to repeal. Therefore, the provisions in chapter eighty-eight of the Acts of 1872-3, in reference to the manner in which lands shall be condemned by railroad companies, is not repealed nor abrogated, by chapter one hundred and fourteen, Acts 1875, and the amendatory act of 1879, chapter eight, and therefore, the circuit court has no jurisdiction in a case where a railroad company seeks to condemn lands; the jurisdiction in such cases being confined to the county court, as decided in *Railroad* v. *Patton*, 9 West Va. 648.

1880
Special Term.

The Chesapeake
& Ohio Rail-
way Co.
v.
Hoard *et al.*

The judgment of the circuit court of Wayne county must be affirmed with costs, and $30.00 damages.

THE OTHER JUDGES CONCURRED.

JUDGMENT AFFIRMED.