# WHEELING.

McCONIHA et al. v. GUTHRIE, JUDGE, &c., et al.

Submitted August 19, 1882—Decided December 9, 1882.

1. Some of the general principles of law stated, governing writs of prohibition, their uses and application. See opinion. (p. 140.)

2. The rule is well established, that where the inferior court has originally jurisdiction of the cause, the writ of prohibition will lie only where such court, during the proceedings or in the conduct of the trial, clearly exceeds its legitimate powers in some collateral matter arising in the cause over which it has no authority; but unless it has so exceeded its authority, on an application for such writ the court above will not enquire whether it has decided right or not. (p. 142.)

3. The inferior court having general jurisdiction of the subject matter, it has the right and authority to determine, whether or not it has acquired jurisdiction of the particular case by a sufficient

service of process or notice upon the defendant. And any error committed in that regard will not be an excess or abuse of its jurisdiction, but an error in adjudicating a matter within its legitimate authority, and the remedy for such error is by writ error or *certiorari*, and not by writ of prohibition.    (p. 142.)

4. The courts do not favor the repeal of a statute by implication; and in construing a prior and a subsequent statute, relating to the same subject matter, the latter will not be held to be a repeal of the former, unless the repugnancy between them is irreconcilable ; and consequently, where the prior statute is general in its terms and prohibits the taking of a certain species of property in any case whatever, and the subsequent statute is limited or special in its terms and authorizes the taking of such property in certain described localities only, the latter will be held to be a limitation or qualification of the former, and the prohibition will apply to all cases except to the localities thus specified in the subsequent statute ; and an express repeal of the qualifying statute will restore the prohibition in the general statute to its original force, and it will then operate as though the qualifying statute had never existed.    (p. 148.)

5. Section 5 of chapter 52 of the Code, as amended by chapter 88 of the Acts of 1870, is in force in this State ; and therefore, if a judge of the circuit court, having general jurisdiction of proceedings to condemn lands for railroad purposes, on the application of a railroad company entertains such proceedings and appoints commissioners to view and ascertain the compensation to be paid for lands, on which there are dwelling-houses of the owners, without the consent of such owners, and makes an order that such railroad company may, upon paying into court the compensation ascertained by such commissioners, take such lands for the use of its railroad, without excepting such houses and a space within twenty feet of each of them, as provided in said section 5, he thereby exceeds his legitimate powers, and a writ of prohibition will be awardrd by this Court, on the petition of such owners, to prohibit him from proceeding therein and said railroad company from invading or taking such houses or the land within twenty feet of any of them.    (p. 149.)

A petition by James D. McConiha and others for a writ of prohibition against F. A. Guthrie, judge of the circuit court of the county of Kanawha, and the Winifrede Railroad Company to restrain the said judge and the said company from all proceedings for the condemnation of certain lands, houses, &c.

The facts of the case are fully stated in the opinion of the Court.

*James H. & James F. Brown, James H. Ferguson* and *E. Willis Wilson* attorneys for petitioners.

*E. B. Knight* and *William H. Hogeman* attorneys for defendants.

Snyder, Judge, announced the opinion of the Court:

James D. McConiha trustee and others, on the 26th day of July, 1882, presented to a judge of this Court, in vacation their petition for a writ of prohibition against F. A. Guthrie judge of the circuit court of Kanawha county and the Winifrede Railroad Company. The said petition represents, that on the 12th day of June, 1882, the said railroad company filed its petition in the circuit court of Kanawha county to take and acquire the title to certain lands of petitioners therein described; that such proceedings were had thereupon that, on the 8th day of July, 1882, said circuit court adjudged that said applicant had lawful right to take said lands for the purposes stated in said petition and appointed commissioners to ascertain the just compensation to be paid petitioners for the same; that petitioners objected to said court entertaining said application and proceeding on said petition, because, it neither had jurisdiction of the persons of all or any of petitioners, nor of the subject-matter of controversy, and presented said objections by motions, pleas and otherwise; that said commissioners have not yet proceeded to execute their authority except to go upon said lands to view the same, but have appointed the 31st day of July, 1882, as the day upon which they will proceed to hear evidence and execute said authority.

"Your petitioners now allege that it is an usurpation and abuse of power upon the part of said circuit court to entertain jurisdiction upon said petition and application and proceeding to condemn said lands, and that said court has exceeded its legitimate powers therein; because, *First*—Notice of said application was not given to any or either of your petitioners as required by law; *Second*—Dwelling houses of your petitioners are situated upon the lands proposed to be taken; and *Third*—Other defects of jurisdiction appearing upon the record."

The said petitioners, therefore, pray that a writ of prohibition issue, &c.

Pursuant to the prayer of said petition the said judge of this Court awarded a rule against said F. A. Guthrie, judge, &c., and the said Winifrede Railroad Company to show cause &c., returnable to this Court, at its session in Charlestown, on the 19th day of August, 1882.

The said F. A. Guthrie, judge, &c., and the said Winifrede Railroad Company appeared in Court on the said 19th day of August, 1882, and filed separate answers to said petition and rule. The said railroad company, in its answer, says: "1st. That sufficient and legal notice of the application mentioned in said petition, made by this defendant to said circuit court of Kanawha county, to take certain property, set out and described in said petition and the plats exhibited therewith, was given in the mode and manner required by law to all parties entitled to such notice; and whether such notice was given or not was a matter within the province and jurisdiction of the said circuit court to try and determine, and if any error has been committed by the said court in the adjudication of that matter, the remedy is by appeal to this Court and not by writ of prohibition. 2d. That it is true there is a dwelling house upon each of the lots of land proposed to be taken by this defendant in said application, designated on the plats and in the pleadings in the record, as lot No. 1 and lot No. 3; but there is no dwelling house upon the lot proposed to be taken by this defendant in said application, designated on said plats and in said pleadings, as lot No. 2.

"And the defendant denies that the fact that there is a dwelling house upon each of said lots, Nos. 1 and 3, in any way interferes with or obstructs the defendant's right to take the same upon paying to the parties entitled thereto the compensation and damages required by law, or in any way deprives the said circuit court of its jurisdiction to try and determine the defendant's application to take said lots and to ascertain and adjudicate in the manner required by law the compensation and damages the defendant shall be required to pay therefor. 3d. That there are no defects whatever in jurisdiction appearing upon the said record.

"That no reason whatever is shown in said petition and record why the said circuit court should not entertain jurisdiction of the aforesaid application of the defendant as to the said lot No. 2, and try and determine the same, and no sufficient and valid reason is shown why the said circuit court should not entertain jurisdiction of said application and try and determine the same as to the said lots Nos. 1 and 3.

"Wherefore the said defendant prays that the said writ of prohibition do not issue."

The record exhibited with the aforesaid petition shows : that the said Winifrede Railroad Company is a corporation created by and under chapter 17 of the Acts of 1881 of this State, and its charter is dated November 16, 1881; that on the 20th day of May, 1882, the said railroad company gave the petitioners, Jas. D. McConiha trustee and others, written notice that it would, on the 12th day of June, 1882, apply to the circuit court of Kanawha county for the appointment of commissioners to view and ascertain compensation to the owners for certain tracts of land situate in Kanawha county between the Chesapeake and Ohio railway and the Kanawha river above the mouth of Field's creek, "which tracts of land *will be* more fully described in the within application and accompanying plat *to be filed* in said court on the day aforesaid," and that application will also be made for such orders and proceedings as may be necessary to invest the railroad company with a fee simple title to said tracts of land, which are required and intended to be appropriated by it for the use of its railway; that on the said 12th day of June, 1882, the said Winifrede Railroad Company filed in said circuit court its written application or petition accompanied by plats fully describing the lands proposed to be taken ; that the lands thus described consist of three lots or parcels, the *first* containing three acres, two roods and twelve feet, the *second* one acre, one rood, thirty-eight poles and sixty-three feet, and the *third* one acre, thirty poles and ten feet, designated respectively as lots Nos. 1, 2 and 3; that on the 8th day of July, 1882, the defendants, James D. McConiha trustee and others, by their counsel appeared for the special purpose, and none other, of the moving to strike

said application and proceeding from the docket of said court, because the same had not been properly matured for hearing and trial, and because the notice aforesaid was insufficient, which motion the court overruled; that the said defendants then demurred to said application and said demurrer having been overruled, the defendants tendered twenty-five pleas, all of which were objected to by the applicant and rejected by the court except plea No. 9 on which issue was joined, tried by the court and found for the applicant; that thereupon the court, on the motion of the applicant, appointed commissioners, pursuant to the statute, to view the three lots of land aforesaid and ascertain what will be a just compensation to the owners therefor, &c.; that to the action and rulings of the court the defendants excepted and their bills of exceptions are made part of the record, and from them it appears that the defendants, James D. McConiha trustee and others, objected to the condemnation of the lands and each part thereof mentioned in the applicant's petition, and to the appointment and selection of commissioners to ascertain the compensation for said lands upon the following grounds: *First*—Because no proof has been made or offered by the applicant, the Winifrede Railroad Company, that the said lands or any part thereof, are intended to be appropriated to any public use or for any purpose of public utility; *Second*—Because no proof has been offered that said lands are necessary for the building, construction or operation of the railroad of the applicant; or that they are in any way necessary for the corporate purposes of said railway; *Third*—Because said lands are not, nor is any part thereof, in any way necessary for the building, construction or operation of said railroad, or for any of the corporate purposes of said railroad company for which it can under the law condemn real estate; and *Fourth*—Because there are dwelling-houses belonging to defendants on said lots Nos. 1 and 3, which will in violation of law be taken and invaded by the said railroad company, if said lots or either of them are condemned.

There were several other grounds of exception and objection made by the defendants, but those given are sufficient to show the nature and character of the defense. These defenses were made by pleas which were rejected, and other-

wise, in such form as to present to this Court the points raised or intended to be raised, at least, I shall, for the purposes of this case, so regard them, and proceed to consider these matters on their merits so far as may be done in this proceeding.

Before proceeding to determine the particular questions presented by this case, I shall state some of the general principles of law governing writs of prohibition which it is necessary to refer to in order to determine said questions.

1.—The power of this Court to award writs of prohibition is conferred by the Constitution; and the cases in which it may be awarded are prescribed by the statute as follows:

"The writ of prohibition shall be, as matter of right, in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy; or, having such jurisdiction, exceeds its legitimate powers." Sec. 1 chap. 153 Acts 1881, page 487.

2.—Prohibition, like all other extraordinary remedies, is to be resorted to only in cases where the usual and ordinary forms of remedy are insufficient and inadequate to afford redress. And it issues only in cases of extreme necessity; and before it can be granted it must appear that the party aggrieved has no available remedy in the inferior tribunals. The jurisdiction is exercised by appellate and superior courts, to restrain inferior courts from acting without authority of law, or exceeding their legitimate powers, where damage or injustice are likely to follow from such action. *Supervisors* v. *Wingfield*, 27 Gratt. 329.

3.—It is an original remedial writ, and is the remedy afforded by the common law against encroachments of jurisdiction by inferior courts, and is used to keep such courts within the limits and bounds prescribed for them by law, and should, therefore, in all proper cases, be applied without hesitation. But it does not lie for errors or grievances which may be redressed, in the ordinary course of judicial proceedings, by appeal or writ of error. It is a fundamental principle and one which will be strictly enforced, that this writ is never allowed to usurp the functions of a writ of error or *certiorari*, and can never be employed as a process for the correction of errors of inferior tribunals. The courts will not permit a writ, which proceeds upon the ground

of an excess or usurpation of jurisdiction, to become an instrument itself of usurpation, or be confounded with a writ of error which proceeds upon the ground of error in the exercise of a jurisdiction which is conceded. It does not lie to prevent a subordinate court from deciding erroneously, or from enforcing an erroneous judgment in a case in which it has a right to adjudicate. In the application of the principle, it matters not whether the court below has decided correctly or erroneously; its jurisdiction of the matter in controversy being conceded, prohibition will not lie to prevent an erroneous exercise of that jurisdiction. *Wilson* v. *Berkstresser*, 45 Mo. 283; *Ex Parte Peterson*, 33 Ala. 74; *Ex Parte Green*, 29 *Id.* 52; *Ex Parte Smith*, 34 *Id.* 455; *People* v. *Wayne Cir. Ct.* 11 Mich. 393; *People* v. *Court Com. Pleas*, 43 Barb. 278; *State* v. *Nathan*, 4 Rich. (Law) 513; *The People* v. *Marine Ct.* 36 Barb. 341.

4.—It follows necessarily from the doctrine just laid down, that mere errors, irregularities or mistakes in the proceedings of the interior court, however gross or palpable, are not sufficient warrant for granting a prohibition where such court has jurisdiction of the subject matter in controversy. And where such inferior court has general jurisdiction of the subject matter, it must exercise its own judgment of the sufficiency of the process by which it acquires jurisdiction of the special subject or person in any particular case, and an erroneous judgment in that regard is not ground for a writ of prohibition, but is the subject of a writ of error. But this general rule is subject to this modification, that where, the inferior courts having a general jurisdiction of the subject matter in controversy, it clearly appears that in the conduct of the trial they have exceeded their legitimate powers in some matter pertaining thereto, for which there is no adequate remedy in the ordinary course of proceeding, the writ of prohibition will lie in such cases under our statute and under the general principles of law— *Washburn* v. *Phillips*, 2 Metc. (Mass.) 296; *Supervisors* v. *Gorrell*, 20 Gratt. 484, 522; *Swinburn* v. *Smith, Judge*, 15 W. Va. 483, 501; *State* v. *Nathan*, 4 Rich. 513; *Quimbo Appo* v. *The People*, 20 N. Y. 531; *Michond* v. *The Judge*, 20 La. Ann. 239; *Clayton* v. *Heidelburg*, 17 Miss. 623; *Sweet* v. *Hulbert*, 51 Barb. 312; High's Ex. L. Rem. §§ 771, 772.

In *ex parte Ellyson*, the court says: "We cannot enquire whether the court had jurisdiction and authority in the *particular* case. That would be to convert a writ of prohibition, which proceeds upon an excess of jurisdiction, into a writ of error, which proceeds upon an error in the exercise of jurisdiction." 20 Gratt. 24. The rule seems to be well established that, where the inferior court has, originally, jurisdiction of the cause, prohibition will lie only in cases where such court, during the conduct of the trial, clearly exceeds its proper jurisdiction or powers in some collateral matter arising on the trial, but unless it has so exceeded its authority, on an application for a prohibition, the court above will not enquire whether it has decided right or not. 3 Bl. Com. 112; *Washburn* v. *Phillips*, 2 Metc. 296. ·

Let us apply these general principles to the case before us.

It will be conceded that the circuit of Kanawha county was invested by law with jurisdiction to condemn real estate for public uses. This jurisdiction, as to the manner of proceeding is statutory; and, therefore, in order to divest the title of the owner of the land proposed to be taken, the mode prescribed by the statute must be strictly pursued, as it confers the only authority possessed by the court in such proceedings. But while the authority is statutory, it is nevertheless, general, and on an application for a writ of prohibition, the court will treat it in the same manner as if it were a proceeding under the common law. Such being the case, it seems to me, to be very clear that the petitioners' objection for the want of proper notice of the application, cannot avail them in this proceeding. The sufficiency of the notice, or the service thereof, was a matter of which the circuit court clearly had jurisdiction and it had the right and authority to adjudicate that matter. If any error was committed in its decision of that question such error could not be regarded as an excess of jurisdiction, but an error in adjudicating a matter of which it had undoubted jurisdiction, and the remedy by writ of error is ample for its correction.

Of the same character are the grounds of objection, alleged by the petitioners in this Court, that the circuit court improperly overruled their demurrer to the application and rejected the pleas offered by them. Whether there was any

proof of the purpose, for which the land sought to be taken, was to be used, whether it was necessary for the corporate purposes of the applicant, or whether it was intended to be used for purposes of public utility, were all matters within the proper authority and jurisdiction of the circuit court, and having such authority and jurisdiction, although it may commit gross and palpable errors and the proceedings may abound in imperfections and irregularities, still it cannot be held to have exceeded its jurisdiction, but it will be regarded simply as an erroneous exercise of its legitimate powers. To permit a writ of prohibition for such matters would be to confound such writ with a writ of error or *certiorari.* To grant a writ of prohibition on such grounds would be an attempt to deprive the circuit court of a jurisdiction which the law in its wisdom thought proper to give it; whereas this Court is only allowed to issue the writ to prevent the abuse or usurpation of a jurisdiction which it does not possess. If this Court were to grant the writ for such error, or supposed error, every such error or supposed error committed by the inferior court during the trial or in the proceedings of an action or suit, would create a separate ground for an application to this Court for such writ, and thus there would be no end to the controversy. We are, therefore, of opinion that prohibition does not lie for all or any one of said causes or alleged grounds. The remedy by writ of error is ample and must be resorted to if petitioners feel themselves aggrieved and desire redress.

This brings us to the only remaining ground relied on by the petitioners, which is, that there are dwelling houses belonging to petitioners on the lands proposed, and allowed by the circuit court, to be taken by the applicant, the Winifrede Railroad Company, which are about to be invaded without the consent of the owners, the petitioners. The said Winifrede Railroad Company in its answer filed in this Court to the petition of petitioners admits that there is a dwelling-house upon each of the lots of land proposed to be taken by it, designated in its application as lot No. 1 and lot No. 3, but denies that there is any dwelling-house on lot No. 2; and, also, denies that the fact that there is a dwelling-house upon each of said lots Nos. 1 and 3 in any way interferes with or obstructs its right to take the same upon paying to the par-

ties entitled thereto the compensation and damages required by law.

There is no proof in the record to show that there is any dwelling-house on the said lot No. 2, and as the said answer denies that there is any, this Court must hold that there is none on said lot No. 2.

It being conceded then that there is a dwelling-house of the petitioners upon each of said lots Nos. 1 and 3, which will be invaded if the said lots are condemned and taken by said Winifrede Railroad Company, the question presented is, is that fact a sufficient ground for awarding a writ of prohibition in this case? The determination of that question involves two enquiries: *First*—Whether a dwelling-house can be taken or invaded for a public use without the consent of the owner? And *Second*—If not, does the writ of prohibition lie to prevent the taking or invasion thereof?

*First*—Can a dwelling-house be taken, without the owner's consent, for public uses? The power of eminent domain is an inseparable incident of sovereignty and its exercise to accomplish lawful objects is conferred by our Constitution upon the Legislature of the State, which, subject to certain limitations, is authorized to declare by general laws the manner in which it may be exercised. The power to take private property for public use, without the owner's consent, being in derogation of the rights of the citizen, the statutes conferring such power must be strictly construed for the protection of the private rights of the citizen. The power being thus conferred by the organic law, upon the Legislature, to declare, by general laws, the manner in which the right of eminent domain may be exercised, in order, therefore, to determine what property may be condemned, we must look to the acts of the Legislature on that subject.

In March 1837, the first general statute for the incorporation of railroad companies was passed by the General Assembly of Virginia. In section 9 of said statute it is provided, that: "Previously to the institution, and during the pendency of proceedings for ascertaining the damages to the proprietor for condemnation of his land for the use of the company, the president and directors, their officers, agents and servants, shall have full power and authority to

enter upon all lands and tenements through which they may desire to conduct their railroad, and to lay out the same according to their pleasure, *so that no dwelling-house, or space within sixty feet of one,* belonging to any person, *be invaded without his consent,* and if they think the interest of the company requires it, to take possession thereof for the purpose of the company;" p. 104 section 9, chapter 118, Acts 1836–7.

In the revisal of 1849, a statute was reported and adopted as a section of the Code, which, after providing that companies incorporated for works of internal improvements may enter lands as provided in the above, declares: "Nor shall a company, under any provision in this chapter, *invade the dwelling-house* of any free person, or any space within *sixty feet* thereof, without the consent of the owner." Section 4, chapter 56, Code of Virginia, p. 323.

Under this statute it was decided that a dwelling-house and a space of sixty feet about it were exempt from invasion by a railroad company. *R. & Y. River R. R. Co.* v. *Wicker,* 13 Gratt. 375.

Section 5 of chapter 52 of the Code of this State is in the same language as section 4 of chapter 56 of the Code of Virginia above mentioned; and chapter 88 of the Acts of 1870, is also in the same language, except that it uses the words "twenty feet" instead "sixty feet," and contains this proviso: "And provided further, that this act shall not apply to any city or incorporated town."

In *Ches. & O. R. R. Co.* v. *Pack,* 6 W. Va. 397, this Court held, that this statute forbids the invasion of a dwelling-house and any space within twenty feet of it by a railroad company, not only for the acquisition of the land by proceedings for condemnation, but for experimental and preparatory purposes. And, also, that the proviso, while it withdrew the protection from invasion entirely in cities and towns, it did not withdraw it from dwellings and lands in the country. This decision was made in July, 1873.

On the 3d day of April, 1873, the Legislature of this State passed an act, providing for the incorporation of associations that may be organized for the construction and operation of railroads. The mode and manner of condemning property for the purposes and uses of railroads are prescribed by sec-

tion 18 of said act, and section 20 provides that the officers and agents of a railroad company may enter upon lands for the examination and surveying of the route of its proposed road. Section 41 of said act is as follows:

41. "Any railroad company heretofore organized and extending into and through this State, or that may organize under this act, shall have power and authority to build and construct their line of railroad, branch or branches, through any gorge, defile, causeway, or narrow ravine, along any stream or river, by, over, under, near to, by the side of, or through any house, outhouse, building or inclosure—burial grounds and cemeteries excepted—by paying or securing to be paid for all such, or the damage occasioned thereto, as shall be agreed upon by the company, and the party or parties, owner or owners, such amount or price therefor as shall be mutually agreed upon by and between the parties in interest, and in case they shall fail to agree upon terms of settlement for such damage, their adjustment and settlement shall be made as herein provided."

Section 42 declares, that:

42. "All general laws of this State in relation to railroad corporations, and the powers and duties thereof, so far as the same are not inconsistent with the provisions of this act, shall remain in force and be applicable to railroad corporations organized under this act," &c.

And section 45 is as follows:

45. "This act shall take effect from and after its passage, and all acts and parts of acts inconsistent with the provisions of this act are hereby repealed."

On March 14, 1881, the Legislature passed an act to amend and re-enact chap. 54 of the Code, and to repeal chap. 88 of the Acts of 1872–3.

Sections 1, 48 and 70 of said act are as follows:

1. "Joint stock companies, incorporated under this chapter, shall be subject to the provisions of the *fifty-second* and fifty-third chapters of the Code, so far as the same are applicable."

48. "If any such corporation shall be unable to agree with the owner of any real estate for the purchase thereof for its corporate purposes, it may have such real estate condemned

for such purposes under the provisions of chapter 42 of this Code."

70.    "All laws of a general nature in relation to railroad corporations now in force in this State, so far as they are not· inconsistent with the provisions of this chapter, in relation to such corporations, shall remain in force and be applicable to railroad corporations organized under this chapter," &c.

The 74th section expressly repeals the act of April·3, 1873 —chap. 88 Acts of 1872–3—and all acts and parts of acts amending the same—chap. 17 Acts 1881.

Chapter 42 of the Code, referred to in section 48 above quoted, defines the purposes for which real estate may be taken without the owner's consent and prescribes the manner of proceeding for its condemnation.    Section 20 of said chapter provides, that after a report, by commissioners of the compensation to be allowed for land ·taken, has been made, whether it has been set aside or recommitted, or not, the applicant upon paying into court the compensation so reported, may take the land for the purpose specified in the application.    "And no order shall be made, or any injunction awarded, by a court or judge, to stay him in so doing, unless it be manifest that the applicant is insolvent, or that he or his officers, agents or servants are transcending their authority, or that such interposition is necessary to prevent injury which cannot be adequately compensated in damages"— chap. 18, § 20, Acts 1881.

I have now given all the statutes which have, as I conceive, any bearing, directly or indirectly, on the enquiry before us.    The only question to be determined under this enquiry is, whether the said section·41 of the Act of April 3, 1873, by implication or otherwise, repeals the aforesaid chapter 88 of the Acts of 1870?

It must be conceded that there is no express repeal.    The 45th section of said act of 1873, declares that· "all acts. and parts of acts inconsistent with the·provisions of this act are hereby repealed."    Are the said acts inconsistent? . The act of 1870, is general, and without exception or qualification, and declares that no dwelling-house shall be invaded.    The said· 41st ·section of the act of 1873, is special and qualified in its terms.    It declares that any railroad company shall

have power to construct their line of road through any gorge, defile, causeway or narrow ravine, along any stream or river by the side of or through any house, outhouse, building or enclosure. It seems to me that by reasonable construction, taking into consideration the facts and circumstances hereinafter stated, the true intent and meaning of the terms here employed are, to give such company the power, in cases where its line of road passes through any gorge, defile, causeway or narrow ravine, &c., to construct their road by the side of or through any house, &c. If that was not the intention, then the words "gorge, defile, causeway or narrow ravine, along any stream or river," are entirely useless and without meaning. The general statutes giving to railroad companies the power to condemn real estate never did, and certainly did not at the time said statutes were passed, exempt gorges, defiles, causeways, narrow ravines, &c., from condemnation. But they did, as we have seen exempt dwelling-houses, and as it might be impracticable, if not impossible, to avoid taking or passing within twenty feet of a house in the construction of a road through a gorge, defile, &c., the Legislature deemed it proper to make an exception or qualification in the general law, prohibiting the taking of a house anywhere or under any circumstances, and permit the taking of houses in such gorges, defiles, narrow ravines, &c. Thus construed, there is no inconsistency in the two statutes. The later statute is merely an exception, limitation or qualification upon the prior statute. They can with perfect consistency stand together, and when reasonably construed, prohibit the taking or invasion of any dwelling or any space within twenty feet of one, except where the line of road is through any gorge, defile, &c., then such prohibition shall not apply.

But, if the interpretation we have given these statutes were doubtful, the rules of construction would, nevertheless, lead to the same conclusion; because a statute can be repealed only by express provision of a subsequent law, or by necessary implication. To repeal a statute by implication there must be such a positive repugnancy between the provisions of the new law and the old, that they cannot stand together or be consistently reconciled. *Wood* v. *United States*, 16 Pet. 342; *Brown* v. *County Com'rs*, 21 Pa. St. 37; *Magruder* v. *The State*, 40 Ala. 347; *Mills* v. *The State*, 23 Tex. 295.

In *Ches. & O. R. R. Co.* v. *Hoard*, 16 W. Va. 270, this Court held that: "A statute general in its terms and without negative words will not be construed to repeal by implication the particular provisions of a former statute which are special in their application to the particular case or class of cases, unless the repugnancy be so glaring and irreconcilable as to indicate a legislative intent to repeal."

In *McCool* v. *Smith*, 1 Black 470, Justice Swayne said: "A repeal by implication is not favored; the leaning of the courts is against the doctrine, if it be possible to reconcile the acts of the Legislature together." Sedgw. on Const. Stat. 106.

These authorities, I think, establish the doctrine, that in construing a prior and subsequent statute, relating to the same matter, the courts will not hold the latter to be a repeal of the former, by implication, unless the repugnancy between them is irreconcilable; and consequently, where the prior statute is general in its terms and prohibits the taking of certain property in any case whatever, and the subsequent statute is special in its terms and authorizes the taking of such property in certain described localities only, the latter will be held to be a limitation on, or a qualification of, the former, and the prohibition will continue in all cases except in the localities specified in the subsequent statute.

Chapter 88 of the Acts of 1870, being simply an act to amend and re-enact section 5 of chapter 52 of the Code, the said section, as thereby amended, continued to be and still is a part of said chapter 52 of the Code. And section 74 of chapter 17 of the Acts of 1881, expressly repeals the said act of April 3, 1873, and section 1 of the same act of 1881, declares that joint stock companies incorporated under said act shall be subject to the provisions of said chapter 52 so far as the same are applicable. Thus the said section 5 of chapter 52 being unrepealed, as we have seen, and said act of April 3, 1873, containing the aforesaid section 41, having been expressly repealed, it follows, necessarily, that the prohibition declared in said section 5 of chapter 52 of the Code, was, on the 16th day of November, 1881, when said Winifrede Railroad Company was incorporated, in full force and entirely relieved of the exception or qualification in section 41 of

the said act of April 3, 1873; and, therefore, neither a dwelling-house nor space within twenty feet of one, belonging to the owner of the land, can be taken or invaded for a public use without the owner's consent.

*Second*—Does the writ of prohibition lie to prevent the taking or invasion of such dwelling-house and twenty feet of land for a public use ? It is, as before stated, very clear that the circuit court, in the case before us, had, originally, general jurisdiction of the subject-matter in controversy. If the writ lies, then it can only do so, because said court has exceeded its legitimate powers in awarding the condemnation of dwelling-houses. The statute is mandatory and declares, in express and positive terms, that a company shall not invade a dwelling-house or any space within twenty feet thereof. There are no circumstances under which such houses and lands can be invaded. The company has no discretion, nor can the court, to which it applies for the enforcement of its rights, exercise any discretion or confer upon it any rights or authority which the law thus expressly denies to it. The question of the right to condemn such houses and lands arose incidentally or collaterally during the proceedings, and the court having no jurisdiction or power to condemn or invade the same, clearly exceeded its legitimate powers in appointing commisioners to invade such property. The action of the court in this matter was not an erroneous exercise of conceded jurisdiction, as was the case in the particulars hereinbefore considered, but was entirely without authority or jurisdiction. For this excess or abuse of authority the petitioners have no remedy in the ordinary course of procedure, in said circuit court or by writ of error. By section 48 of chapter 42 of the Code, hereinbefore given, the court is prohibited from making any order to stay the company from invading the property reported for condemnation, unless the company is insolvent or to prevent irreparable injury. And even if said circuit court had power to make such order, it would be hopeless, if not absurd, to apply to it for such order after it had decided that the property was subject to condemnation. Nor could there be in such case adequate redress by writ of error to the Appellate Court, for, in all probability, before the proceedings had so far progressed as

to entitle the owner of the property to such writ the house would have been removed and the railroad constructed over its ruins. I am, therefore, of opinon that the rule awarded herein, on the 26th day of July, 1882, as aforesaid, against F. A. Guthrie, Judge, &c., and the Winifrede Railroad Company be made absolute to the extent of prohibiting the said F. A. Guthrie, Judge, &c., from authorizing the said Winifrede Railroad Company, its officers, agents and servants to invade and the said company from invading the dwelling-houses of the petitioners, James D. McConiha trustee and others, or of either or any of them, situate on the lands in the petition and plats of the said railroad company filed in said circuit court and designated as lots Nos. 1 and 3 or any space within twenty feet of any such house or houses without the owner's consent. And it is ordered that the following writ of prohibition do issue accordingly, and that the said railroad company pay to the petitioners herein their costs in this behalf expended :

The Court for reasons stated in writing and filed with the record, is of opinion : First—The judge of a circuit court has power under the Constitution and laws of the State to entertain proceedings for the condemnation of land for public uses in the mode prescribed by chapter 18 of the Acts of 1881. Second—The said court having jurisdiction of the subject-matter of such proceedings, the writ of prohibition does not lie, unless, in some collateral matter arising during the progress thereof, it exceeds its legitimate powers by the exercise of authority over such collateral matter in violation of a positive inhibition of the law; and Third—The said Frank A. Guthrie, judge of the circuit court of Kanawha county, had no power to appoint commissioners to view, or authorize the Winifrede Railroad Company to take for its corporate purposes, without the consent of the owner, the dwelling-houses, or any of them, on lots Nos. 1 and 3 in the petition mentioned or the land within twenty feet thereof.

Therefore, it is adjudged and ordered that the motion to discharge the rule awarded in this case be overruled, and that a writ of prohibition be and is hereby awarded directed to the defendants commanding the said Frank A. Guthrie, judge as aforesaid, not to authorize the condemnation of and

the said Winifrede Railroad Company, its officers, agents and employes, not to take or invade for any purpose, without the consent of the owner, any dwelling-house on the lots of land designated as Nos. 1 and 3, in the said petition and record mentioned and described, or the land within twenty feet of any such house; and that so much of the orders heretofore made by said judge as appoints commissioners to view and ascertain compensation for said houses and twenty feet of land around each, and authorizes the said Winifrede Railroad Company, upon the payment of such compensation, to take said houses and land is hereby superseded and set aside. And it is further adjudged and ordered that the service of an office copy of this order upon the defendants shall have the same force and effect as the execution upon them of a writ of prohibition issued in pursuance hereof. And it is further adjudged and ordered that the petitioners, James D. Mc-Conahey, trustee, *et als.*, recover against the defendant the Winifrede Railroad Company their costs by them expended in the prosecution of this proceeding, which is ordered to be certified to the said circuit court of Kanawha county.

THE OTHER JUDGES CONCURRED.

WRIT OF PROHIBITION AWARDED.