# CHARLESTON.

## STURM v. FLEMING.

*(WOODS, JUDGE, absent.)

Submitted June 26, 1888.—Decided December 14, 1888.

1. JUDICIAL SALE—RECOVERY OF MONEY.

    Where money from the sale of property has by order of the court been paid, and the decree ordering its payment was void, the party, whose property was sold to raise the money, may recover the same from the party, to whom it was illegally paid.

2. REPEAL BY IMPLICATION—CONSTRUCTION OF STATUTE—SPECIAL PROVISIONS.

    A statute general in its terms and without negative words will not be construed to repeal by implication the particular provisions

*Counsel below.

of a former statute, which are special in their application to a particular case or class of cases, unless the repugnancy is so glaring and irreconcilable as to indicate the legislative intent to repeal.

3. STATUTE OF LIMITATIONS.

Chapter 102, Acts 1882 (the general limitation act) does not repeal by implication chapter 28, Acts 1872-73, providing for a special class of cases; and said statute is still in force.

4. STATUTE OF LIMITATIONS—CONSTITUTIONAL LAW.

Said act is constitutional when applied to an implied contract.

5. STATUTE OF LIMITATIONS—RENTS AND PROFITS.

Where said act applies, a party may go back more than five years before suit brought in an account for rents and profits.

*Edwin Maxwell* for appellant.

*A. F. Haymond* for appellee.

JOHNSON, PRESIDENT :

This is the third time this cause has been before this Court. 22 W. Va 404; 26 W. Va. 54. Asbury P. Sturm was a Confederate soldier. While he was within the Confederate lines, a number of war-trespass-judgments were recovered against him. Among said judgments was one in favor of Solomon S. Fleming; also one in favor of Selden M. Ogden, the appellant here. Said judgments were recovered in 1864 without personal service, while said Sturm was within the Confederate lines; and while still within said lines, in February, 1864, a chancery suit was brought by said Fleming against said Sturm and others. In the bill all the judgments are set out, and it is alleged " that said Asbury P. Sturm was lately the owner of a tract of sixty one acres of land on Robinson's run, which was sold on the 1st day of December, 1864, for $2,406.26, under a decree in favor of Bassel Lucas against said Sturm and others, and that said Sturm is yet the owner of thirty acres adjoining the first named tract, and two acres and sixteen poles adjoining both said tracts." After setting out a great number of judgments, including that of Selden M. Ogden, the plaintiff charges, that all said judgments against Sturm are liens upon the unappropriated money arising from the sale of the sixty one acres, and on the unsold lands. The bill makes all the so-called judgment-lien creditors defendants; prays that the court will declare the said judgments liens on the money arising out of the sale of

the said sixty one acres, and also on the lands still unsold, and that the lands may be sold *etc.*

On the 17th day of March, 1865, a decree was entered fixing the priorities of the liens, and declaring the judgments liens on the money and lands, and decreeing, " that the money arising from the sale of the sixty one acre tract of land, after the payment of the liens provided for by the decree, under which the said sixty one acre tract of land was sold, be applied on the judgments herein mentioned, and in the order herein named," and ordering the sale of the other lands. S. M. Ogden's lien was declared the first. A decree rendered on the 12th day of June, 1865, by which it appeared the lands had been sold by the commissioner, and John Chalfant became the purchaser, confirmed the sales and directed deeds to be made on payment of the purchase-money. Sturm gave notice, that on the 10th day of December, 1867, he would move the court to reverse the decree of the 17th of March, 1865, for the various reasons stated in said notice.

On the 27th day of March, 1868, the said Solomon Fleming, defendant in said notice, appeared and filed his affidavit, under the act passed February 28, 1865, entitled, " An act to prevent the prosecution of suits and the suing out of process by persons engaged in rebellion," and requested the court to make an order dismissing said suit, unless the plaintiff in a reasonable time take and file the affidavit required by law ; whereupon the court ordered, that unless the plaintiff should take the affidavit prescribed by the act of February 11, 1865, and file the same with the papers of the cause on or before the first day of the next term, the case should be dismissed. The oath required was that said Sturm had not " aided the rebellion" *etc.* Sturm having failed to take the affidavit on the 4th day of June, 1868, the court dismissed the notice.

On the 29th day of November, 1873, the said Asbury P. Sturm filed what he called his " petition for a re-hearing," in which he set out said record, and made all the said so-called judgment-lienors and the said purchasers defendants, and in which he claimed for reasons stated therein, that the judgments were void, and the decree in said chancery suits were void *etc.* The defendants demurred to said petition ; and on said demurrer on the 13th day of July, 1874, the court dis-

missed the petition, and Sturm appealed. On the hearing of said appeal (22 W. Va. 404,) it was held, that said petition should be treated as an original bill in the nature of a bill of review. It was further held, that a judgment or decree pronounced in an action at law or suit in equity, instituted during the late civil war by a plaintiff residing within the Union lines in a court within said lines, against parties residing within the Confederate lines and in the Confederate military service without any appearance by or notice to such parties, other than an order of publication published within the Union liens, is absolutely void and may be so treated in the same or any subsequent collateral suit or proceeding. The court held, that, if the allegations of said bill were true, all these judgments at law and decrees in the chancery suit were void. The decree sustaining the demurrer to the petition so treated as an original bill in the nature of a bill of review was reversed, and the demurrer overruled, and the cause remanded with leave to the defendants to answer, and for further proceedings to be had.

The defendants answered the bill on the 27th day of May, 1884, and in their answer averred, that all of said judgments against Sturm were paid off and satisfied in full more than five years before the 6th day of February, 1873; "wherefore the defendants deny that the said petitioner can maintain his petition filed by him on the 29th day of November, 1873, either to set aside the judgments or any of them, or to recover back from these defendants or any of them the money paid to them, respectively, in discharge of said judgments or any part thereof." The purchaser, Chalfant, in his answer, says the proceedings in said chancery case were regular, " and this defendant now insists that his said purchase can not be invalidated or in anywise affected by any proof hereafter taken to show the said proceedings irregular" *etc.*

Depositions were taken, and on the 27th day of January, 1885, the court set aside all said judgments at law, and declared the same void, also set aside the sales of the land, and referred the cause to a commissioner to ascertain and report what amount, if any, was paid on the judgments of Solomon S. Fleming, Charles E. Billingsly, Selden M. Ogden and others, out of the proceeds of the tract of sixty one acres of

land sold under the decree of said court in the cause of Bassel Lucas against the plaintiff, Sturm, and others, after satisfying the decree in favor of said Lucas and others in said last-named cause *etc.* and other matter deemed pertinent by the commissioner or required by either party. What I have here set forth appears in the record brought to this Court on the appeal of John Chalfant. 26 W. Va. 54. The decree appealed from by Chalfant, the substance of which is above set forth, was affirmed. The record in the cause now before the Court contains the report of the commissioner, showing the moneys paid out to the judgment creditors from the proceeds of the sixty one acres of land, and also the rents due from John Chalfant, less the value of his improvements and taxes paid, and goes back to the time, when Chalfant took possession.

The defendants, Ogden, Monroe, Fortney, Strickler, Martin and Billingsly, excepted to so much of the report as charges them or either of them with moneys paid them by Commissioner Maxwell out of moneys he received out of the proceeds of the sale of the sixty one acres of land *etc.*, because—*First.* The plaintiff has another suit pending in this Court to recover the said sixty one acres of land or the proceeds of the sale thereof. *Second.* The bill in this cause is to recover the tract of thirty acres and the two acres and sixteen poles of land or the proceeds of the sale thereof, and the prayer for general relief in the bill only relates to that subject. *Third.* The payments were made, and each and every one of them was made, to the defendants more than five years before the 6th day of February, 1873, and more than five years before the plaintiff filed his bill.

The report was re-committed as to the account against Chalfant on an exception, and the report was again filed as to said account, and it showed Chalfant's indebtedness to Sturm on the 1st day of January, 1886, to be $4,257.08. Chalfant excepted to the report, because—*First.* The rent charged defendant for the use of the property is excessive. *Second.* The report charges defendant with rent upon improvements made on the property by the defendant. *Third.* There is no law now in force, under which the bill could have been filed at the time it was filed, and therefore no

89

further order or decree can be made in the cause. *Fourth.* The defendant, John Chalfant, can not be charged with rents and profits on the property for more than five years prior to January 27, 1885, the time when the first order of reference was made in the cause, that being the first demand of rents and profits in this cause, and for the purpose of recovering rents and profits, and must be treated as the time of the commencement of this suit, as the prayer in the bill is only for general relief.

The cause was finally heard on the 1st day of October, 1886. The court entered a decree against John Chalfant for $4,083.16 with interest from that date; and against Selden M. Ogden for $642.45; and against William Monroe for $812.00; against John M. Fortney, administrator of Joshua Robinson, to be paid out of the assets in his hands, $1,019.40; against Strickler for $417.87; against George W. Martin, Jr., for $448.71; and against Charles E. Billingsly for $138.97. All these sums bore interest from October 1, 1886, the date of the decree. The court gave costs against the defendants. From this decree Selden M. Ogden alone appealed, and was granted a *supersedeas.*

The question we will first consider is whether there was any claim against Ogden and those who were in a like condition in the suit. It is argued at some length, by counsel for appellant, that he is protected under section 20, art. VIII, Const., as, he claims, this was a claim recovered by him against Sturm for an act done according to the usages of civilized warfare; and in such cases, under the constitution, no question passed and finished could be re-opened. That its object was peace and repose.

That was its object; but, if that section were not in the constitution, the question still would be : Did Sturm have a right to recover back the money paid Ogden from the proceeds of his property? If it had been any other judgment than a war-trespass-judgment, the same question would arise, because the judgment was, as held in *Sturm* v. *Fleming,* 22 W. Va., void, and could be attacked collaterally, because the court had no jurisdiction of the cause, there having been no service and no appearance. If Sturm had not been obstructed, he could at once on the payment of the

money on that void judgment have brought his suit to recover it back. He did bring his suit to recover it back, but not until the 29th day of November, 1873. It is insisted that at that time the right to recover was barred. It is true, this belongs to the class of suits barred under the statute in five years; and of course more than five years had elapsed between the date of the last payment and the date of the commencement of the suit, November 29, 1873. But it is claimed for Sturm, that by the act of 1873, February 6, " in computing the time within which any civil suit, motion to recover money, proceeding or appeal shall be brought, instituted or taken, or petition filed to have proceeding reheard by persons who could not truly make the affidavit prescribed in section 27, ch. 106, Code W. Va., the period from the 28th day of February, 1865, to the passage of this act shall be excluded from such computation." The answer to this by counsel for appellant is, that by chapter 102, Acts 1882, this statute was repealed by implication; and, there being no saving as to suits pending, is, under the authority of *Curran* v. *Owens*, 15 W. Va. 224, as far as this suit is concerned, as though it had never been enacted. It is insisted by counsel for Sturm that said act was not repealed by implication.

It is a well-established rule that the repeal of statutes by implication is not favored, and one act is only held to repeal another by implication, when the two statutes are so inconsistent and repugnant to each other, that both can not remain in force. *State* v. *Cain*, 8 W. Va. 721, and cases cited. A statute general in its terms and without negative words will not be construed to repeal by implication the particular provisions of a former statute, which are special in their application to a particular case or class of cases, unless the repugnancy be so glaring and irreconcilable as to indicate the legislative intent to repeal. *Railway Co.* v. *Hoard*, 16 W. Va. 270; *McConiha* v. *Guthrie*, 21 W. Va. 135; *Powell* v. *Parkersburg*, 28 W. Va. 698.

In *McConiha* v. *Guthrie* it was decided that courts do not favor the repeal of a statute by implication; and in construing a prior and subsequent statute relating to the same subject-matter the latter will not be held to be a repeal of the

former unless the repugnancy between them is irreconcilable; and consequently, when the prior statute is general in its terms and prohibits the taking of a certain species of property in any case whatever, and the subsequent statute is limited or special in its terms and authorizes the taking of such property in certain described localities only, the latter will be held a limitation or qualification of the former, and the prohibition will apply to all cases except to the localities thus specified in the subsequent statute, and an express repeal of the qualifying statute will restore the prohibition in the general statute to its original force, and it will then operate, as though the qualifying statute had never existed.

Here the Legislature in 1882 re-enacted the general statute in almost the precise words in which it was before. This statute, general in its terms, referring to the general case in which the bar would apply, had no reference to the particular class of cases provided for in chapter 28 of the Acts of 1872–73, and there are no negative words therein,— nothing to indicate that the legislative mind was directed to the special provisions of the statute of 1873; and we do not regard the repugnancy of the two statutes as so glaring and irreconcilable as to indicate the legislative intent to repeal. The two statutes may well stand together,—the general statute being modified by the special one; the latter referring to a particular class of cases. So chapter 28 of the Acts of 1872–73 is still in force.

This act, by the decision in _Huffman_ v. _Alderson_, 9 W. Va. 616, was held to be constitutional when applied to express contracts; and by the same reasoning it is constitutional when applied to implied contracts, though the action was barred by the statute of limitation when the act was passed. In _Hall v. Webb_, 21 W. Va. 318, it was held the said act, in so far as it attempts, in actions for the recovery of land after the action had become barred, to revive the right of action, is unconstitutional. The suit was not barred.

It is also assigned as error, that the court decreed the proceeds of the sale of said sixty one acres to be paid to Sturm, because another suit is pending for the recovery of the proceeds of the sale of said land. No such defence is pleaded, and there is no evidence in the record of any such fact.

It is also assigned as error that any decree was rendered, in respect to the proceeds of the sale of said sixty one acres, as no such tract was involved under the pleading in the cause. The tract was not involved, but the pleadings set out in this opinion show, that the proceeds of the sale of said land were involved in the suit.

It is further assigned as error, that the court overruled the exceptions of the petitioner (the appellant) to the report of the commissioner. We have already disposed of these exceptions, except one, which is: "The bill in this cause is to recover the tract of thirty acres and the two acres and sixteen poles of land or the proceeds of the sale thereof;" and the prayer for general relief in the bill only relates to that subject. This is a mistake. The bill was filed to recover the thirty acres and the two acres, and to have refunded to him the proceeds of the sale of the sixty one acres; and this he was entitled to have under his prayer for general relief.

No one has made any argument for any of the appellees except Sturm. John Chalfant in the court below by the counsel, who appears here for the appellant, excepted to the commissioner's report. His first exception is that the rent charged was excessive and not supported by the evidence. This exception is too general and will not put on the court the burden of reading all the evidence. *Chapman* v. *Railroad Co.*, 18 W. Va. 198. The second is, that the report charges the defendant with rent on improvements on the property made by him. I do not so read the report. The third is, that there is no law in force under which the bill could have been filed at the time it was filed; therefore no further order or decree can be entered in the cause. This is unintelligible. The Supreme Court of Appeals has said the bill was properly filed. The fourth exception is that the account went back more than five years before the decree referring the cause to a commissioner to take the account. As he was obstructed in his right to bring the suit, he is not limited to the five years before the suit was brought and had the right, as he did, to go back to the date of his illegal dispossession of the property. The decree is affirmed.

Affirmed.