STATE OF WEST VIRGINIA, *at the relation of* A. GARNETT
THOMPSON, *individually and as a member of the*
WEST VIRGINIA TURNPIKE COMMISSION

*v.*

D. HOLMES MORTON
(No. 10692)

*and*

STATE OF WEST VIRGINIA, *at the relation of* JAMES M.
DONOHOE, *individually and as a member of the*
WEST VIRGINIA TURNPIKE COMMISSION

*v.*

HUGH F. HUTCHINSON
(No. 10693)

Submitted September 1, 1954. Decided October 12, 1954.

Lovins, Judge, dissenting.

*John G. Fox,* Attorney General, *T. D. Kauffelt,* Assistant Attorney General, for relators.

*Robert S. Spilman, Wood Bouldin, Jr., Stuart W. Thayer,* for respondents.

Given, President:

In these original proceedings in mandamus the controlling facts are the same, and questions of law are identical. They are heard on the petition of the State at the relation of A. Garnett Thompson, in one of the proceedings; the petition of the State at the relation of James M. Donohoe, in the other proceeding; the demurrer and answer of the defendant D. Holmes Morton to the petition of the State at the relation of Thompson; the demurrer and answer of the defendant Hugh F. Hutchinson to the petition of the State at the relation of Donohoe; demurrers to the respective answers; very exhaustive briefs; and oral arguments. Only questions of law are involved. For convenience, Thompson and Donohoe may be referred to as petitioners.

Prior to July 6, 1954, defendants were duly appointed and serving as members of the West Virginia Turnpike Commission, for specified terms. The respective terms for which defendants were appointed and then serving would not expire until long after any date material in these con-

troversies. On July 6, 1954, the Governor of West Virginia addressed letters of identical effect to defendants, which letters stated: "By virtue of the authority vested in me as Governor of West Virginia, I hereby remove you from office as a member of the West Virginia Turnpike Commission effective July 15, 1954."

On July 10, 1954, the Governor, in so far as he had power to do so, appointed the petitioner Thompson to fill the vacancy created by the removal of the defendant Morton, and appointed the petitioner Donohoe to fill the vacancy created by the removal of the defendant Hutchinson. Petitioners allegedly qualified as to the respective offices to which they had been so appointed, and proper demands for possession of the offices and the prerogatives thereof were made by petitioners. Defendants refused to comply with such demands, continue to deny petitioners the right to the respective offices, and continue in their attempts to exercise the powers and functions of such offices. Thus, the controlling issue, whether the Governor, under the Constitution and statutes, had authority to effect the removal of defendants, clearly arises.

By Chapter 139 of the 1947 Acts of the Legislature, Article 16A of Chapter 17 of the Michie Code of 1949, hereinafter referred to as the Turnpike Act, the West Virginia Turnpike Commission was created. Section 3 of that Act provided that the Commission should consist of five members. The State Road Commissioner was made a member *ex officio* and the other four members were to be "* * * appointed by the governor, by and with the advice and consent of the senate. The appointive members shall be residents of the state, and shall have been qualified electors therein for a period of at least one year next preceding their appointment. The members of the commission first appointed shall continue in office for terms expiring on July first, one thousand nine hundred fifty-one, July first, one thousand nine hundred fifty-three, July first, one thousand nine hundred fifty-five, and July first, one thousand nine hundred fifty-seven, respectively, the term

of each such member to be designated by the governor, and until their respective successors shall be duly appointed and qualified. The successor of each such member shall be appointed for a term of eight years, except that any person appointed to fill a vacancy shall be appointed to serve only for the unexpired term, and a member of the commission shall be eligible for reappointment * * *".

The only other provision of the Turnpike Act which we believe can have any possible bearing on the questions involved is the last sentence of Section 20, which reads: "All acts and parts of acts inconsistent with this act are hereby repealed."

Apparently the Governor's attempted exercise of power in the attempted removal of defendants from such offices rested principally, at least, on the provisions of Chapter 94 of the 1921 Acts of the Legislature, now Code, 6-6-4, which reads: "Any person who has been, or may hereafter be appointed by the governor to any office or position of trust under the laws of this State, whether his tenure of office is fixed by law or not, may be removed by the governor at his will and pleasure. In removing such officer, appointee, or employee, it shall not be necessary for the governor to assign any cause for such removal."

The wording, terms and meaning of the Code section just quoted appear clear and without any difficulty of understanding or application. It can not be questioned, we think, that if the provisions thereof have not been repealed, and are constitutional, the authority or power attempted to be exercised by the Governor in the removal of defendants was vested in him. The controlling contentions of defendants are that Code, 6-6-4, was repealed by the Turnpike Act, expressly or by implication; or, if not repealed, that the Turnpike Act created an exception to the provisions thereof as to the offices of West Virginia Turnpike Commissioners; or if no repeal or exception was effected by the Turnpike Act, that Code, 6-6-4, is void as being violative of Section 10 of Article VII of the State

Constitution, which reads: "The Governor shall have power to remove any officer whom he may appoint in case of incompetency, neglect of duty, gross immorality, or malfeasance in office; and he may declare his office vacant and fill the same as herein provided in other cases of vacancy."

Another constitutional provision, Article IV, Section 8, pertinent to a consideration of the question involved, reads: "The Legislature, in cases not provided for in this Constitution, shall prescribe, by general laws, the terms of office, powers, duties and compensation of all public officers and agents, and the manner in which they shall be elected, appointed and removed."

Still another constitutional provision, Article IV, Section 6, may have some significance as to the questions involved. It reads: "All officers elected or appointed under this Constitution, may, unless in cases herein otherwise provided for, be removed from office for official misconduct, incompetence, neglect of duty, or gross immorality, in such manner as may be prescribed by general laws, and unless so removed they shall continue to discharge the duties of their respective offices until their successors are elected, or appointed and qualified."

The contention of defendants relating to express repeal of Code, 6-6-4, quoted above, by the Turnpike Act, appears to be based principally on the fact that the Turnpike Act provides for definite or fixed lengths of terms for the offices of Turnpike Commissioners, whereas Code, 6-6-4, makes the terms indefinite. Some reliance appears to be placed on the last sentence of Section 20 of the Turnpike Act, quoted above. In 82 C. J. S., Statutes, Section 284, it is stated: "In order to effectuate an express repeal, a statute must so describe and distinguish the statute to be repealed, as by designation of its name, title, or caption or by reference to its subject, contents, or substance, as to leave no doubt as to what statute is intended * * *". See *State* v. *Jackson*, 120 W. Va. 521, 199 S. E. 876. A read-

ing of the pertinent provisions of the Turnpike Act will disclose that it makes no mention or reference to Code, 6-6-4, so as to describe or distinguish it by name, title, caption, or otherwise. It would seem clear, therefore, that there was no express repeal. Our views regarding this question will more fully appear, and other supporting authorities will be cited, in the discussion herein of the question relating to repeal by implication.

Defendants' contention that Code, 6-6-4, has been repealed by implication is based principally on the assumption that there exists a clear conflict or repugnancy between that section and the Turnpike Act, in that the Turnpike Act provides for definite lengths of terms of Turnpike Commissioners, while Code, 6-6-4, constitutes terms of all officers to which it is applicable indefinite. We think, however, that the supposed conflict is not real. The statutory provisions can be readily reconciled. In 82 C. J. S., Statutes, Section 288, it is stated: "The repeal of statutes by implication is not favored. The courts are slow to hold that one statute has repealed another by implication, and they will not make such adjudication if they can avoid doing so consistently or on any reasonable hypothesis, or if they can arrive at another result by any construction which is fair and reasonable. Also, the courts will not enlarge the meaning of one act in order to hold that it repeals another by implication; nor will they adopt an interpretation leading to an adjudication of repeal by implication unless it is inevitable and a very clear and definite reason therefor can be assigned.

"Furthermore, the courts will not adjudge a statute to have been repealed by implication unless a legislative intent to repeal or supersede the statute plainly and clearly appears. The implication must be clear, necessary, irresistible, and free from reasonable doubt." The West Virginia cases are in accord. In *Harbert* v. *County Court of Harrison County,* 129 W. Va. 54, 39 S. E. 2d 177, this Court held: "5. Repeal of a statute by implication is not favored in law." In the opinion, the Court stated: "Repeal of a

statute by implication is not favored in law; and a general statute should not be construed to repeal a special law unless it does so by express words, or unless the words which it employs manifest a plain intention to repeal. *Kimball* v. *Loughney,* 70 W. Va. 765, 74 S. E. 753; *Coal & Coke Ry. Co.* v. *Conley and Avis,* 67 W. Va. 120, 67 S. E. 613. Statutes are not considered to be repealed by implication unless the repugnancy between the new provisions and a former statute be plain and unavoidable, and a construction which repeals former statutes or laws by implication, and divests long approved remedies, is not favored by the courts. *Forqueran* v. *Donnally,* 7 W. Va. 114; *Belknap* v. *Shock,* 125 W. Va. 385, 24 S. E. 2d 457; *United States Coal & Coke Co.* v. *Turk,* 127 W. Va. 368, 33 S. E. 2d 463. The rule is well settled that to repeal a statute by implication there must be such positive repugnancy between the provisions of the new and the old that they can not stand together or be consistently reconciled. *State* v. *Enoch,* 26 W. Va. 253; *Clemans* v. *Board of Education,* 68 W. Va. 298, 69 S. E. 808. A statute general in its terms and without negative words will not be construed to repeal by implication the particular provisions of a former statute which are special in their application to a particular case or class of cases, unless the repugnancy is so glaring and irreconcilable as to indicate the legislative intent to repeal. *Sturm* v. *Fleming,* 31 W. Va. 701, 8 S. E. 263; *Powell* v. *Parkersburg,* 28 W. Va. 698; *McConiha* v. *Guthrie,* 21 W. Va. 134; *C. & O. R. R. Co.* v. *Hoard,* 16 W. Va. 270 * * *". See *Chesapeake and Ohio Railway Company* v. *Public Service Commission,* 139 W. Va. 161, 81 S. E. 2d 700; *Thacker* v. *Ashland Oil & Refining Co.,* 129 W. Va. 520, 41 S. E. 2d 111; *State* v. *Hinkle,* 129 W. Va. 393, 41 S. E. 2d 107; *United States Coal and Coke Co.* v. *Turk,* 127 W. Va. 368, 33 S. E. 2d 463; *Belknap* v. *Shock,* 125 W. Va. 385, 24 S. E. 2d 457; *State* v. *Jackson,* 120 W. Va. 521, 199 S. E. 876; *McHenry* v. *Humes,* 112 W. Va. 432, 164 S. E. 501; *First National Bank* v. *De Berriz,* 87 W. Va. 477, 105 S. E. 900; *Kimball* v. *Loughney,* 70 W. Va. 765, 74 S. E. 953; *Knight* v. *Town of West Union,* 45 W. Va. 194, 32 S. E. 163; *Totten*

v. *Nighbert,* 41 W. Va. 800, 24 S. E. 627; *State* v. *Enoch,* 26 W. Va. 253; *McConiha* v. *Guthrie,* 21 W. Va. 134; *Conley* v. *Supervisors of Calhoun County,* 2 W. Va. 416.

Defendants' contention as to repeal by implication rests, to some extent, on the presence of a general repealer clause in the Turnpike Act. In *State* v. *Jackson, supra,* this Court held: "2. A general repealer clause in a statute is only declaratory of what would be the legal effect of the statute without the repealing provision. Its insertion in a statute, however, indicates an assumption on the part of the Legislature that the statute to some extent is repugnant to a prior enactment." See *Harbert* v. *County Court of Harrison County, supra.*

In *Belknap* v. *Shock, supra,* the Court said: "We are not overlooking the last sentence of the amendatory act: 'All acts or parts of acts inconsistent with this act are hereby repealed.' This sentence is a part of the very substance of the act, and must be given effect precisely as any other part. But observe the exact words used. No act or part of an act is repealed except such as are 'inconsistent' with the new enactment. The word 'inconsistent' when so used is not to be loosely construed. It does not mean merely, inharmonious, inappropriate, illogical, unsymmetrical, but connotes impossibility of concurrent operative effect. To be automatically repealed by a subsequent statute, the two acts must be so conflicting that their common survival is a legal impossibility, or that only one can be in force at a given time. The two laws must be so antagonistic that they cannot co-exist. Two antithetical statutes cannot cover the same subject matter at the same time. One must yield to the other from sheer necessity, and by universal practice, the later in time is held to prevail. Thus the inconsistency which will result in the abrogation of one statute by another must be such as will make it impossible as a matter of law that they can both be effective * * *". In view of these holdings, and many others that could be cited, we think it can not be questioned to be the law in this State that to warrant an adjudication that a certain

statute has been repealed by implication, notwithstanding a general repealer clause in the later statute, "there must be such a positive repugnancy between the provisions of the new law and the old, that they can not stand together or be consistently reconciled". *State* v. *Enoch, supra.*

It will be noticed that Code, 6-6-4, quoted above, is expressly made applicable to every officer appointed by the Governor, "whether his tenure of office is fixed by law or not * * *". It also expressly applies to any appointee who "has been, or may hereafter be appointed by the governor". No exception as to any person appointed to any office subsequently created by the Legislature is made. The section concerns itself with one subject only, the removal of officers by the Governor. In contrast, the pertinent provisions of the Turnpike Act deal with a different subject; the terms, that is, the length of the regular terms, of Turnpike Commissioners. Viewing these statutory provisions in this light, as we are required to do in an effort to avoid any supposed repugnancy, it is apparent that the statutes can, and must, be read together, the one supplementing the other. This being true, there can not be any "positive repugnancy" between them. Reading the statutory provisions together, they simply mean that the term of an officer of the Turnpike Commission shall be eight years, unless such officer is sooner removed according to law.

What has been said necessarily disposes of defendants' contention that if Code, 6-6-4, was not repealed by the Turnpike Act, the Turnpike Act created an exception as to Turnpike Commissioners. Obviously, if the two statutory provisions are to be read together, one supplementing the other, there could exist no exception.

Having reached the conclusion that Code, 6-6-4, was not repealed by the Turnpike Act, and that the Act created no exception, we are forced to consider the question relating to the constitutionality of Code, 6-6-4. The contention of defendants is that Article VII, Section 10 of the State Constitution, quoted above, provides the only causes

for which the Governor may remove from office Turnpike Commissioners, the constitutional provision being a limitation on the power of the Legislature to vest in the Governor the right of removal from such offices members thereof for causes other than the ones designated in the constitutional provision. In other words, defendants would say that the constitutional provision having designated certain causes for which the Governor may remove such officers from office, the maxim often invoked in aid of determining the meaning of a constitutional or statutory provision, *expressio unius est exclusio alterius,* should control.

No inherent power to remove from office is vested in the Governor of this State. That power, except where limited by the Constitution, is inherently vested in the legislative department of the government. *Bridges* v. *Shallcross,* 6 W. Va. 562. Of course, if the Constitution vests such power in the Governor, such power may not be denied him even though the exercise thereof be considered to be the exercise of a judicial function. *Bridges* v. *Shallcross, supra;* 43 Am. Jur., Public Officers, Section 187.

Where the Legislature authorizes the appointment of a public officer without fixing a definite term and without making any provision as to his removal from office, the power to remove such person from office will be held to have been impliedly vested in the person making the appointment. *Town of Davis* v. *Filler,* 47 W. Va. 413, 35 S. E. 6. Petitioners here, however, do not rest their cases on any implied power, but say that Code, 6-6-4, expressly vests such power in the Governor.

The exact question posed has not been previously before this Court. Courts of other jurisdictions can not be said to be in harmony. Language used in opinions of cases in some of the states can be understood to mean that where a constitutional provision authorizes the Executive to remove from office certain officers for specified causes, the maxim *expressio unius est exclusio alterius* should control, and that the Legislature is thereby rendered

powerless to vest further power in the Executive relating to removal of such officers. See *Wilcox* v. *People ex rel. Clark Lipe,* 90 Ill. 186; *State ex rel. Beck* v. *Young,* 154 Neb. 588, 48 N. W. 2d 677; *Commonwealth* v. *Williams,* 79 Ky. 42; *Holliday* v. *Fields,* 210 Ky. 179, 275 S. W. 642; *Lizano* v. *City of Pass Christian,* 96 Miss. 640, 50 So. 981; *People ex rel. Finlay* v. *Jewett,* 6 Calif. 291; *Dacus* v. *Johnston,* 180 S. C. 329, 185 S. E. 491. Some of the constitutional provisions pertinent to the respective cases just cited are very similar to Section 10 of Article VII, but no case has been found wherein the Court discusses or rests its decision on constitutional provisions to the same total effect which we believe must be given to Section 10 of Article VII and Section 8 of Article IV, both quoted above, when read together, as we believe they must be. Some of such cases involved removal of elective or constitutional officers, and do not necessarily apply to appointive officers. Others involved questions arising in proceedings involving attempted removals pursuant to constitutional provisions, not pursuant to statutory authority, as here.

As above noticed, the power of removal as to such officers not granted to the Governor remained in the Legislature. The people, however, did not remain silent as to the duty of the Legislature in the exercise of that power. By Section 8 of Article IV, they directed that the Legislature "shall prescribe, by general laws", concerning the "manner" of election, appointment and removal of such officers. In *State ex rel. Harmon* v. *Board of Canvassers,* 87 W. Va. 472, 105 S. E. 695, the Court, in considering the meaning which should be attributed to the word "manner" found in this section, stated: "* * * It is urged that section 8 of Article 4 directs the legislature to provide, by general laws, the term for which the appointee to fill a vacancy in an elective office may serve. We do not so decide. The legislature may fix the term of an office, not provided for in the Constitution, prescribe the powers, duties and compensation and the manner of election, appointment and removal. The word 'manner' used in

section 8 of Article 4 as construed in *Bridges* v. *Shallcross,* 6 W. Va. 562, relates to the agent or person who may appoint, as well as the formality with which it should be done * * *". Like meaning should be attributed to the word "removal" used in the same section. Is it not clear that the Legislature was carrying out the direct and positive command of the people, as expressed in Section 8, in the enactment of Code, 6-6-4? Is it not also clear that Section 10 of Article VII and Section 8 of Article IV are required to be read together for the purpose of determining the constitutional intent as to the entire subject of removal as to such officers? We so hold. *McDonald* v. *Guthrie,* 43 W. Va. 595, 27 S. E. 844.

Looking to the plain wording in Section 10 of Article VII and Section 8 of Article IV, reading them together, and keeping in mind the fact that the Governor has no absolute power of removal except that granted to him by the Constitution, we are forced to the conclusion that Code, 6-6-4, is constitutional, and that Section 10 of Article VII vests in the Governor an irreducible minimum of power as to removal of such officers. There is no contention here, of course, as to the power of the Governor, under Section 10 of Article VII, to remove for some cause designated in that section. The contention is that all power of removal as to such officers, except that granted to the Governor, inherently or by Section 8 of Article IV, was vested in the Legislature, and that the Legislature, in the exercise of the power so vested in it, enacted the statute, Code, 6-6-4, claimed to be unconstitutional. To otherwise construe Section 10 of Article VII, or by applying the maxim *expressio unius est exclusio alterius,* we would, in effect, deny the Legislature power to legislate as to all causes of removal of such officers other than those designated in Section 10, which would be in direct contravention of the provisions of Section 8 of Article IV. Defendants "do not in this case question the power of the Legislature of West Virginia to create an office to be held at the will and pleasure of the Governor." This being true, as the authorities hold, there can be little doubt that the Legis-

lature has power to create an office and provide that a person appointed thereto may serve for a fixed term unless sooner removed by the Governor, as it has done by the Turnpike Act and Code, 6-6-4.

Some of the decisions of this Court, not in conflict with the foregoing conclusions, though not directly in point, are helpful in consideration of the constitutional question, and are referred to: *State ex rel. Ralich* v. *Millsop,* 138 W. Va. 599, 76 S. E. 2d 737; *Schwartz* v. *County Court,* 136 W. Va. 626, 68 S. E. 2d 64; *Harbert* v. *County Court of Harrison County,* 129 W. Va. 54, 39 S. E. 2d 177; *State ex rel. Downey* v. *Sims,* 125 W. Va. 627, 26 S. E. 2d 161; *LePage* v. *Bailey,* 114 W. Va. 25, 170 S. E. 457; *State ex rel. Key* v. *Bond,* 94 W. Va. 255, 118 S. E. 276; *Dawson* v. *Phillips,* 78 W. Va. 14, 88 S. E. 456; *Blue* v. *Smith,* 69 W. Va. 761, 72 S. E. 1038; *Blue* v. *Tetrick,* 69 W. Va. 742, 72 S. E. 1033; *Kelley and Moyers* v. *Bowman,* 68 W. Va. 49, 69 S. E. 456; *Taylor* v. *Taylor,* 66 W. Va. 238, 66 S. E. 690, 19 Ann. Cas. 414; *Town of Davis* v. *Filler,* 47 W. Va. 413, 35 S. E. 6; *Moore* v. *Strickling,* 46 W. Va. 515, 33 S. E. 274; *McDonald* v. *Guthrie,* 43 W. Va. 595, 27 S. E. 844; *Ice* v. *Marion County Court,* 40 W. Va. 118, 20 S. E. 809; *State* v. *Gilman,* 33 W. Va. 146, 10 S. E. 283, 6 L. R. A. 847; *Richards* v. *Clarksburg,* 30 W. Va. 491, 4 S. E. 774; *Bridges* v. *Shallcross,* 6 W. Va. 562. See also *State of Montana ex rel. Nagle* v. *Sullivan and Baumgartner,* 98 Mont. 425, 40 P. 2d 995, 99 A. L. R. 321, Annotation Page 336.

In an annotation to the case of *Collison* v. *State ex rel. Green, Attorney General,* 39 Del. 460, 2 A. 2d 97, 119 A. L. R. 1422, the author says: "The authorities generally support the rule that, in the absence of a constitutional provision prescribing the manner of removing the officer in question, or requiring that there be cause as a condition of such removal, a statute specifying the number of years for which an officer shall hold office, and expressly providing that he may be removed without cause, authorizes his summary removal at any time within the designated term". An examination of the many cases referred to

by the author, as well as the cases cited above, leads us to the same conclusion.

The Act of the Legislature in question, carried into the 1931 Code, was first enacted as Chapter 94 by the 1921 Legislature. Since its enactment no fewer than fifteen different Legislatures have enacted laws relating to appointment of officers for fixed terms, without making any provision for their removal from office. These Legislatures have undoubtedly relied on the provisions of Code, 6-6-4, as covering such removals. If that provision does not do so, those Legislatures have clearly failed to obey the command of the people, through the Constitution, to provide for such removal by "general laws". Since 1921 numerous Legislatures have enacted laws relating to removal of officers having fixed terms, for specified causes, without mentioning any procedure for removal; or for indefinite terms with explicit restrictions of removal; or for fixed terms with power to remove for unspecified causes; or for fixed terms with express power to the Governor to remove at his will and pleasure. In no case since 1921 do we find that any Legislature has attempted to deny the Governor the right to remove any officer for any cause designated in Section 10 of Article VII. From these enactments; it can not be doubted that the interpretation, by the many Legislatures of this State, of Section 10 of Article VII, has been to the effect that all power relating to the removal of such officers rests in the Legislature, except as to the power granted to the Governor by that section.

The administrative interpretation is in accord with the legislative interpretation. In 1941 the Governor requested an opinion from the State Attorney General as to the constitutionality of Code, 6-6-4. After an exhaustive study and careful analysis of many decisions and other authorities, the Attorney General advised the Governor, in an opinion prepared by the late Ira J. Partlow, then an Assistant Attorney General, as follows: "In answering your inquiry, it is necessary to consider two questions: (a) Is the power of the Governor to remove officers

appointed by him restricted to removal *for cause* by Section 10, Article VII of the Constitution, and (b), if that question be answered in the affirmative, then, does it follow that Section 4, Article 6, Chapter 6 of the Code, authorizing the Governor to remove officers appointed by him at his will and pleasure and without assigning cause, is violative of the constitutional provision?

"To answer the first question in the affirmative, the constitutional provision would have to be construed to the same effect as if it contained the word 'only,' so as to make it read as follows: 'The Governor shall have power to remove any officer whom he may appoint *only* in case of incompetency, neglect of duty, gross immorality, or malfeasance in office.' This question is not free from doubt, but, as we have stated, we are inclined to the view that the constitutional provision is not a restriction of the power of the Governor.

"But if the first question be answered in the affirmative, we do not believe that it must be held that the statute authorizing the Governor to remove officers appointed by him at his will and pleasure and without assigning cause is unconstitutional. A statute must be so construed, *if fairly possible,* as to avoid the conclusion that it is unconstitutional. See 6 R. C. L., page 78, title 'Constitutional Law,' Section 77; 25 R. C. L., page 1000, title 'Statutes,' Section 243; 11 Am. Jur., Page 725, title 'Constitutional Law,' Section 97. An elementary rule is that every reasonable construction must be resorted to in order to save a statute from unconstitutionality * * *.

"The statutes authorizing the Governor to appoint officers usually provide that the appointments shall be made for a term of a certain number of years. Any one of those statutes should be read in connection with Section 4, Article 6, Chapter 6 of the Code, and effect given to both, if possible. The provisions of that section are clear and explicit. The legislative intention cannot be misunderstood, and should prevail, if the statute be susceptible of the construction that it is not violative of the constitutional provision.

"There is nothing in the Constitution requiring the legislature to fix definite terms in creating statutory offices, and it is unquestionably within the power of the legislature to provide that such terms shall be at the will and pleasure of the appointing power. When any one of the statutes providing for the appointment of an officer by the Governor for a term of years is read in connection with Section 4, Article 6, Chapter 6 of the Code, we believe that the proper construction of the two statutes is that the appointments are for the terms named, subject to termination by the Governor 'at his will and pleasure,' and without assigning cause * * *".

"We are not prepared to say that the question is free from doubt, but we express the opinion that Section 4, Article 6, Chapter 6 of the Code is not unconstitutional, and that, in pursuance of the power granted to the Governor by that section, you may remove any officer appointed by the Governor, at your will and pleasure, and without assigning any cause for removal. We do not think that the confirmation of any such officer by the Senate affects your power." Report and Opinions of the Attorney General, 1941-1942, Page 78.

It is not contended, of course, that legislative interpretation and administrative interpretation, however long continued, will control the Courts in arriving at the meaning of a plain constitutional or statutory provision of law. But if doubt exists, such interpretations may be given weight. It may even be determinative when questions are very close. "3. If this construction of said constitutional provisions could be regarded as being doubtful, the doubt would have to be resolved in favor of such legislative power, and legislative construction thereof, made manifest by the exercise of such power throughout a long period of years, acquiesced in by the people of the State and its courts, would now forbid judicial disturbance thereof." *State ex rel. Hallanan* v. *Rocke,* 91 W. Va. 423, 113 S. E. 647. See *Simms* v. *County Court of Kanawha County,* 134 W. Va. 867, 61 S. E. 2d 849; *State Road Commission* v. *County Court of Kanawha County,* 112 W. Va.

98, 163 S. E. 815; *State* v. *Kittle*, 87 W. Va. 526, 105 S. E. 775; *Dean* v. *Paolicelli*, 194 Va. 219, 72 S. E. 2d 506.

Defendants further contend that if Code, 6-6-4, has not been repealed, and is not in conflict with Section 10 of Article VII of the State Constitution, it is invalid for the reason that it attempts to confer judicial powers on the Executive in violation of Section 1 of Article V and Section 1 of Article VI of the State Constitution. Section 1 of Article V reads: "The Legislative, Executive and Judicial Departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the Legislature." Section 1 of Article VI reads: "The legislative power shall be vested in a Senate and House of Delegates. The style of their Acts shall be, 'Be it enacted by the Legislature of West Virginia.'"

We find no merit in the contention. While the Constitution contemplates the independent operation of the three departments of government as to all matters within their respective fields, there can be no doubt that the people, through their Constitution, may authorize one of the departments to exercise powers otherwise rightfully belonging to another department. As we have herein determined that the Constitution has vested in the Governor certain irreducible power with reference to the removal of such officers, and that the Legislature was vested with power to legislate as to the remaining power of removal, as it did in enacting Code, 6-6-4, it necessarily follows that the Governor was exercising a power "properly belonging" to him.

A further contention is that the attempted delegation by the Legislature to the Executive, by Code, 6-6-4, of the power to remove from office, is invalid for the reason that the statute "prescribes no event, condition or standard whatever by which the Executive's action is to be governed * * *". To say that the Legislature must fix

standards to be followed by the Executive in the removal of such officers would, in effect, destroy the free discretion of the Legislature to provide the "manner" of such removal granted to it by Section 8 of Article IV. We can not read such a limitation into that provision. Obviously, if the Legislature empowers the Governor to remove officers at his will and pleasure, and without assigning any cause for removal, the fixing of standards would be a useless procedure.

One further contention of defendants. They say that if Code, 6-6-4, is unconstitutional for no other reason, it is unconstitutional as violative of the due process clauses of the State and Federal Constitutions. We think the point has been determined by the decisions of this Court and by the United States Supreme Court. In *Moore* v. *Strickling,* 46 W. Va. 515, 33 S. E. 274, 50 L. R. A. 279, this Court held: "2. A public office is not property, within the meaning of the constitutional provision that 'no person shall be deprived of life, liberty or property without due process of law and the judgment of his peers.' It is a mere public agency, revocable according to the will and appointment of the people, as expressed in the constitution and the laws enacted in conformity therewith." In the opinion the Court uses this language: "* * * Public offices belong to the people, and are to be both conferred and taken away according to their will and appointment, and a person who accepts a public office does so subject to all the constitutional and legislative provisions in relation thereto. *Attorney General* v. *Jochim,* cited. The Constitution provides, in Art. IV., section 6, that 'all officers elected or appointed under this constitution may, unless in cases herein otherwise provided for, be removed from office for official misconduct, incompetence, neglect of duty or gross immorality in such manner as may be prescribed by general law.' That is, the removal must be in the due and orderly course of law, satisfying the requirements of due process of law, or the law of the land. *Attorney General* v. *Jochim,* cited *Jelly* v. *Dils,* 27 W. Va. 267; *Ex parte Wall,* 107 U. S. 265, (2 Sup. Ct.

569). By 'due process of law' is meant 'laws general in their operation, and not special acts of legislation passed to affect the rights of particular individuals against their will, and in a way in which the same rights of others are not affected by existing laws.' *Sears* v. *Cottrell*, 5 Mich. 251. 'Due process of law does not require a plenary suit and trial by jury in all cases where property and personal rights are involved.' *Ex parte Wall*, cited. The State cannot be so bound by the term 'due process of law' in the constitution that it is impossible for it to invest its agents with its offices, without subjecting itself to the delays and uncertainties of strict judicial action in cases where the official is abusing his agency and trust, to the injury and disgrace of the public service. It is well settled that all appointive officers may be removed by the appointing power; that all high constitutional officers may be removed by impeachment; and that other county officers, except the clerk of the circuit court, prosecuting attorney, sheriff, surveyor of lands, and county commissioners, are removable by the county court of the county * * *". To the same effect is *Hockman* v. *Tucker County Court*, 138 W. Va. 132, 75 S. E. 2d 82. See *Hatfield* v. *Graham*, 73 W. Va. 759, 81 S. E. 533.

In *Wilson* v. *North Carolina*, 169 U. S. 586, 42 L. ed. 865, 18 S. Ct. 435, the Court stated: "Authorities are not required to support the general proposition that in the consideration of the constitution or laws of a State this court follows the construction given to those instruments by the highest court of the State. The exceptions to this rule do not embrace the case now before us. We are, therefore, concluded by the decision of the Supreme Court of North Carolina as to the proper construction of the statute itself, and that as construed it does not violate the constitution of the State.

"The only question for us to review is whether the State, through the action of its Governor and judiciary, has deprived the plaintiff in error of his property without due process of law, or denied to him the equal protection of the laws.

"We are of opinion the plaintiff in error was not deprived of any right guaranteed to him by the Federal Constitution, by reason of the proceedings before the Governor under the statute above mentioned, and resulting in his suspension from office.

"The procedure was in accordance with the constitution and laws of the State. It was taken under a valid statute creating a state office in a constitutional manner, as the state court has held. What kind and how much of a hearing the officer should have before suspension by the Governor was a matter for the state legislature to determine, having regard to the constitution of the State. The procedure provided by a valid state law for the purpose of changing the incumbent of a state office will not in general involve any question for review by this court. A law of that kind does but provide for the carrying out and enforcement of the policy of a State with reference to its political and internal administration, and a decision of the state court in regard to its construction and validity will generally be conclusive here. The facts would have to be most rare and exceptional which would give rise in a case of this nature to a Federal question."

From the conclusions reached, it necessarily follows that a peremptory writ of mandamus must be awarded in each of the cases here considered, as prayed for in the respective petitions.

*Writs awarded.*

Lovins, Judge, dissenting:

I respectfully dissent from the conclusion reached by the Court in this proceeding.

The respondents base their defense on three propositions: (1) That the provisions of Chapter 139, Acts of the Legislature, 1947, Regular Session, fixing the terms of office of the Turnpike Commissioners, is irreconcilable with the provisions of Code, 6-6-4; (2) that in removing the defendants from their offices as Members of the West

Virginia Turnpike Commission, they were deprived of due process of law;' (3) that Code, 6-6-4, is unconstitutional.

The first two propositions have merit. I prefer to rest this dissent on the unconstitutionality of Code, 6-6-4.

The applicable parts of the Constitution of this State read as follows: Section 10, Article VII.

> "The Governor shall have power to remove any officer whom he may appoint in case of incompetency, neglect of duty, gross immorality, or malfeasance in office; and he may declare his office vacant and fill the same as herein provided in other cases of vacancy."

Section 6, Article IV.

> "All officers elected or appointed under this Constitution, may, unless in cases herein otherwise provided for, be removed from office for official misconduct, incompetence, neglect of duty, or gross immorality, in such manner as may be prescribed by general laws, and unless so removed they shall continue to discharge the duties of their respective offices until their successors are elected, or appointed and qualified."

Section 1, Article VI.

> "The legislative power shall be vested in a Senate and House of Delegates. * * *".

Section 1, Article V.

> "The Legislative, Executive and Judicial Departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the Legislature."

Section 10, Article VII defines in clear language the power of the Governor to remove an officer appointed by him, and the causes for such removal. One or all of the causes named in that Section, in order to justify removal of an officer appointed by the Governor, must be present.

Section 10, Article VII is a clear statement of the maximum and minimum powers of the Governor pertaining to removal of appointive officers. The causes stated therein may not be added to nor changed by statute. Throop on Public Officers, §341, 4 Cooley's Constitutional Limitations, 138 et seq.; *Dickson* v. *Strickland* (Tex.) 265 S. W. 1012; *The Commonwealth* v. *Williams,* 79 Ky. 42. See *Harbert* v. *County Court,* 129 W. Va. 54, 39 S. E. 2d 177; *State* v. *Gillman,* 33 W. Va. 146, 10 S. E. 283; *State* v. *Young,* (Neb.) 48 N. W. 2d 677. The cause or causes should be stated in writing.

Notwithstanding the plain provisions of the Constitution, the Legislature of 1921 enacted Code, 6-6-4, which reads as follows:

> "Any person who has been, or may hereafter be appointed by the governor to any office or position of trust under the laws of this State, whether his tenure of office is fixed by law or not, may be removed by the governor at his will and pleasure. In removing such officer, appointee, or employee, it shall not be necessary for the governor to assign any cause for such removal."

In my opinion, the above quoted statute contravenes Section 10, Article VII, of the Constitution: (a). By authorizing the Governor to remove "at his will and pleasure" any appointive officer; (b) in eliminating any necessity for assignment of a cause for such removal.

The statute is contrary to that principle of the common law which requires the existence of a cause for removal. "The doctrine, that an officer may be removed at pleasure, has grown up in the American courts; at common law, an officer could be removed only for cause and after a hearing." Throop on Public Officers, Section 362. Code, 6-6-4, if considered to be valid, being in derogation of the common law, and an innovation upon that well settled and salutary principle above stated, should be applied strictly. *State* v. *Douglas,* 91 W. Va. 338, 112 S. E. 684; *Railway Co.* v. *Conley and Avis,* 67 W. Va. 129, 67 S. E.

613; 1 Cooley's Constitutional Limitations, Eighth Edition, 134; *Harrison v. Leach,* 4 W. Va. 383.

It is to be observed that Code, 6-6-4, as applied by the Court in this proceeding, deprives citizens of an office by arbitrary exercise of executive power. Though an office is not property, it is a valuable privilege of a citizen to be permitted to serve his state or nation. Likewise, Code, 6-6-4, permits a tyrannical and despotic principle to be exercised in the administration of public affairs, contrary to common right and the idea of checks and balances. I think the statute violates Section 10, Article VII, by permitting the Chief Executive of this State to remove an appointive officer at any time with or without cause.

It is not competent for the Legislature to authorize the removal of officers for causes other than those mentioned in the Constitution. They cannot extend by statute reasons for removal by adding other causes for a removal not named in the Constitution. Mechem's Public Offices and Officers, page 29.

In the case of *State v. Young, supra,* the Court considered a constitutional provision identical with Section 10, Article VII, with the exception that the words "gross immorality" are not contained in the Constitution of the State of Nebraska. In that case, it was held that the power of the governor to remove an officer of the executive branch of the government, appointed by him, was decided by the governor and was self-executing. The officer removed was given a hearing however, and the cause of such removal was specified. The court upheld the right of the governor to remove such officer. In this case, no cause is specified and no reason given for such removal.

Code, 6-6-4, eliminates the necessity for any cause by authorizing the Governor of this State, at any time for any reason, or no reason, to remove a man from office, even though such officer may have, under a different statute, a fixed tenure of office.

It is an accepted rule of construction that when the Constitution states the circumstances in which a power

may be exercised, or a penalty imposed, such statement is an implied prohibition against legislative interference to add to the powers so stated. Cooley's Constitutional Limitations, Eighth Edition, page 139.

As upholding the principle that Section 10, Article VII, of the Constitution defines the Governor's powers of removal as expressed therein, excludes such powers given by the provisions of Code, 6-6-4, the following rule is helpful: "A statute, [a constitutional provision] limiting a thing to be done in a particular manner, or by a prescribed person or tribunal, implies that it shall not be done otherwise, nor by a different person or tribunal. *Expressio unius est exclusio alterius." Taylor v. Taylor,* 66 W. Va. 238, 66 S. E. 690. "The provisions of the Constitution, the organic and fundamental law of the land, stand upon a higher plane than statutes, and they will as a rule be held mandatory in prescribing the exact and exclusive methods of performing the acts permitted or required." *Simms v. Sawyers,* 85 W. Va. 245, 101 S. E. 467.

In 47 W. V. L., 145 and 2 Va. Law Rev., 183, discussions will be found concerning the power of the legislature to delegate its power to another department of the state government.

It may be stated that in passing Code, 6-6-4, the Legislature not only delegated the power conferred by Article IV, Section 6, of the Constitution, but went farther and abdicated its power. That statute makes the Governor of this State the sole judge of the necessity and reason for removing an officer with or without cause. Such abdication of power is denounced by most, if not all authorities. In *Panama Refining Co. v. Ryan,* 293 U. S. 388, 55 S. Ct. 83, 79 L. Ed. 645, the Court speaking by Mr. Chief Justice Hughes said:

"The Constitution provides that 'All legislative powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives.' Art. I, §1. And the Congress is empowered 'To make all laws

which shall be necessary and proper for carrying into execution' its general powers. Art. I, §8, par. 18. The Congress manifestly is not permitted to abdicate, or to transfer to others, the essential legislative functions with which it is thus vested. Undoubtedly legislation must often be adapted to complex conditions involving a host of details with which the national legislature cannot deal directly. The Constitution has never been regarded as denying to the Congress the necessary resources of flexibility and practicality, which will enable it to perform its function in laying down policies and establishing standards, while leaving to selected instrumentalities the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the legislature is to apply. Without capacity to give authorizations of that sort we should have the anomaly of a legislative power which in many circumstances calling for its exertion would be but a futility. But the constant recognition of the necessity and validity of such provisions, and the wide range of administrative authority which has been developed by means of them, cannot be allowed to obscure the limitations of the authority to delegate, if our constitutional system is to be maintained."

The above quotation applies with equal force to the Legislature of this state.

It is not a question of motives of the administrative officers or agents exercising legislative powers. It is a question of constitutional authority, "for which the best of motives is not a substitute." *Panama Refining Co.* v. *Ryan, supra.*

It has been said "* * * that the paramount test as to whether or not a particular statute amounts to an invalid delegation of legislative power is the degree of completeness of the statute as it appears when it leaves the hands of the legislative body. The law must be so complete in all its terms and provisions when it leaves the legislative branch of the government that nothing is left to the judgment of the delegate or appointee of the Legislature, and, where a statute passed by the Legislature is not complete

as legislation, but authorizes an executive board or some other named authority to decide what should and what should not be deemed infringement of the law, it must be held unconstitutional as attempting to make an improper delegation of legislative power." *State* v. *Fowler* (Fla.) 114 So. 435.

The above quotation, though not applying precisely in all particulars to the facts in the instant proceeding, is pertinent enough to show that the question of the removal of the Turnpike Commissioners should not be left solely to the will and pleasure of the Governor, without regard to the rights of the defendants, if we are to maintain our constitutional system. See *State* v. *National City Bank of Cleveland* (Ohio App.) 11 N. E. 2d 93.

Code, 6-6-4, vests the Governor with arbitrary discretion as to removal of officers, and, I think is invalid. *North* v. *Board of Education, Etc.,* (Ill.) 145 N. E. 158. Code, 6-6-4, authorizes the removal of any appointive officer regardless of tenure as fixed by other statutes and violates Article V, Section 1 of the Constitution. See *Fugate* v. *Weston* (Va.) 157 S. E. 736.

In *State* v. *Huber,* 129 W. Va. 198, 40 S. E. 2d 11, this Court, in discussing the constitutional principle of separation of powers, quotes with approval the following:

> " 'A fundamental principle of American constitutional jurisprudence, accepted alike in the public law of the Federal Government and of the States, is that, so far as the requirements of efficient administration will permit, the exercise of the executive legislative and judicial powers are to be vested in separate and independent organs of government. The value of this principle or practice in protecting the governed from arbitrary and oppressive acts on the part of those in political authority, has never been questioned since the time of autocratic royal rule in England. That the doctrine should govern the new constitutional system established in 1789 was not doubted. Washington, in his farewell address, said: "The spirit of encroachment tends to consolidate the

powers of all governments in one, and thus to create, whatever the form of government, a real despotism." Madison, in The Federalist, wrote: "The accumulation of all powers, legislative, executive, and judicial, in the same hands whether of one, a few, or many, whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny." John Adams wrote: "It is by balancing one of these three powers against the other two that the efforts in human nature toward tyranny can alone be checked and restrained and any degree of freedom preserved;" and Hamilton asserted "I agree that there is no liberty if the powers of judging be not separated from the legislative and executive powers." Webster stated the same doctrine when he said: "The separation of the departments [of government] so far as practicable, and the preservation of clear lines between them is the fundamental idea in the creation of all of our constitutions, and doubtless the continuance of regulated liberty depends on maintaining these boundaries.' ".

"The authors of the Constitution of this State did not lose sight of this principle of government. In framing our Constitution for submission to the people of the State, they inserted therein, * * * Article V, * * *"., hereinabove quoted.

In *Chapman* v. *Housing Authority*, 121 W. Va. 319, 3 S. E. 2d 502, this Court held that a federal statute supplied the necessary standards and that a delegation of legislative powers to an administrative body by the state statute was not illegal.

In *State* v. *Bunner*, 126 W. Va. 280, 27 S. E. 2d 823, this Court went too far, and, to my mind, exceeded the constitutional limits in permitting the delegation of legislative power to an administrative board. In *Rinehart* v. *Flying Service*, 122 W. Va. 392, 9 S. E. 2d 521, the first point of the syllabus reads as follows: " 'The legislature may not vest executive officers or bodies with uncontrolled discretion in making rules and regulations, and must establish sufficient standards for their guidance. However,

having established a sufficiently definite policy, standard, or rule, the legislature may authorize an administrative officer or body to make rules, regulations, or orders relating to the administration or enforcement of the law, and give to such rules and regulations binding force and effect of law.' " The principles and limits relating to delegation of legislative power is well established and generally accepted. "One of the settled maxims in constitutional law is, that the power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority. Where the sovereign power of the State has located the authority, there it must remain; and by the constitutional agency alone the laws must be made until the constitution itself is changed. The power to whose judgment, wisdom, and patriotism this high prerogative has been intrusted cannot relieve itself of the responsibility by choosing other agencies upon which the power shall be devolved, nor can it substitute the judgment, wisdom, and patriotism of any other body for those to which alone the people have seen fit to confide this sovereign trust." 1 Cooley's Constitutional Limitations, Eighth Edition, page 224.

The Constitution of this State has vested all legislative power in the Senate and House of Delegates. Power to remove officers is generally conferred on the Legislature by Article IV, Section 6 of the Constitution. Section 1, Article V, prohibits any other person from exercising the power so conferred on the Legislature, except as modified by Article VII, Section 10 of our Constitution. The power of the Governor to remove an officer under that provision is confined to the reasons of incompetency, neglect of duty, gross immorality, and malfeasance of incumbent.

None of those reasons being present in this case, the defendants having been appointed for definite terms, their tenure being prescribed by the act under which they were appointed, I do not think that Code, 6-6-4, is authority for their summary removal. Therefore, I dissent, and would deny the peremptory writ as prayed for.

A concurring note in the case of *State of West Virginia Ex Rel. John G. Fox, Attorney General, Etc.* v. *Raymond Brewster,* Number 10665, 140 W. Va. 235, written by the writer of this dissent, distinguishes that case from the instant proceeding. I think entirely different questions are presented by the two proceedings.